### GAMER CO. v. GAMAGE.

(Court of Civil Appeals of Texas. Ft. Worth. March 30, 1912. On Motion for Rehearing, April 27, 1912.)

1. Master and Servant (§ 286*)—Injuries —Jury Question—Failure to Warn.

An employé's action for personal injuries while operating a machine for cutting leather washers, by the machine suddenly starting and catching his hand, *held* entitled to go to the jury on the question of negligence in failing to warn plaintiff of the danger.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046; Dec. Dig. § 286.*]

2. Trial (§ 139*) — Instructions — Weight of Evidence.

In an employé's action for personal injuries by a leather cutting machine suddenly starting and catching plaintiff's hand, an instruction that, if plaintiff was inexperienced in operating such machinery, and defendant knew thereof and did not warn him, and he was thereby subjected to a danger of which he did not know, and which he would have avoided had he been so warned, and the danger was not open to observation, and plaintiff made a proper use of his faculties, he could recover was erroneous, where the evidence made it at most a jury question whether defendant was guilty of any negligence in failing to warn plaintiff of the danger from the sudden starting of the machine.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

3. Master and Servant (§§ 101, 102*) — Master's Duty—Safe Instrumentalities.

A master's duty is only to use ordinary care to furnish safe appliances for work, and he is not an insurer against defects which are

not and cannot be known to him by due care in inspection.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178, 179, 180–184, 192; Dec. Dig. §§ 101, 102.*]

4. TRIAL (§ 28*)—CONDUCT—VIEW BY JURY.

It was not error not to require the jury to personally examine the machine on which an employé was injured, where there had been a fire on the premises since the accident and the machine was not shown to be in the same condition as at the time of the accident.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 77–79; Dec. Dig. § 28.*]

5. APPEAL AND ERROR (§ 742*)—ASSIGNMENT OF ERROR—STATEMENT OF EVIDENCE—NECESSITY.

An assignment of error, in an employé's action for injuries in refusing to direct a verdict for defendant because the evidence failed to show negligence, will be overruled, if appellant's statement under the assignment does not set out the evidence bearing on the question.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

Appeal from District Court, Tarrant County; W. T. Simmons, Judge.

Action by Henry C. Gamage against the Gamer Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded for new trial.

Lassiter, Harrison & Rowland, of Ft. Worth, for appellant. Hunter & Hunter and A. J. Clendenen, all of Ft. Worth, for appellee.

CONNER, C. J. This is an appeal from a judgment in appellee's favor for the sum of $2,500 as damages for personal injuries. At the time of appellee's injury ·he was operating a machine for cutting leather washers. The method of operating the machine was substantially as follows: An iron shaft in the lower end of which was attached a cutter was made to move up and down by means of cogwheels moving from a pulley shaft extending horizontally above. There was a belt running from the pulley shaft above to the connecting machinery below, which, by means of a wooden lever within reach of the operator, was moved upon pulleys one of which ran loosely permitting the belt to run thereon without operating the cutter, and the other was a fixed or tight pulley which, when the belt was placed thereon, put the cutter in operation. The operator when cutting the washers, by means of the wooden lever mentioned, would move the belt upon the tighter pulley, thus putting the cutting rod or shaft in operation, and extend the leather out of which the washers were to be cut forward and under the cutter. The cutter, or "die," as it is termed, fixed in the bottom of the cutting shaft was detachable. It was inserted in a proper receptacle drilled in the bottom of the cutter shaft and fastened in place by a pin extend-·ing horizontally through the shaft. Appellee

at the time of the injury had inserted the die in the cutter shaft, having stopped the operation of the machine for that purpose, and, having raised the shaft for such distance from the plate immediately below as to admit of its insertion, took the cutter in his left hand with three of his fingers on the under side, and while in the act of inserting the fastening pin in the cutter shaft the machine suddenly started in motion moving downward, and before appellee could remove his hand it was caught between the die and the receiving plate, and three of his fingers were cut off. The negligence alleged was that the machinery was out of repair and defective and dangerous to work with; that these defects caused the machine to start in movement; that appellee was an inexperienced workman; and that he had not been warned of the dangers attending the work to which he had been assigned. Appellant answered by a general denial and pleas of assumed risk and contributory negligence, charging that appellee was guilty of contributory negligence in placing his hand beneath the cutter rather than around its stem while engaged in the effort of inserting it in the cutter shaft; and, also, that the machine moved slowly, and that had appellee exercised due care in observing his work he would have seen the movement in time to have extracted his hand without injury.

[1, 2] Error is assigned to the third paragraph of the court's charge, which is as follows: "If you believe from the evidence that, when he entered the employment of the defendant, the plaintiff was inexperienced in the use and operation of such machinery as he was required to use, and that the defendant, or its employés, who employed and had control over him, knew that he was so inexperienced and uninformed, and that they did not inform or warn him, and that he was thereby subjected to a danger which he did not know, and which he would have avoided had he been so warned and instructed, and which was not open to his observation, and he made proper use of his facilities and information, and if because of these facts, if you so find, the plaintiff was injured, you will find for the plaintiff." This charge is objected to on the ground, among other things, that "it instructs the jury to return a verdict in plaintiff's favor if the defendant did not inform or warn him without reference to whether this failure on the defendant's part was negligence or not." We think under the evidence it is subject to the objection made to it. That this may appear it will be necessary that we refer to the evidence relating to the issue. The appellee testified that he had never before been employed in operating machinery until engaged by the appellant company; that he had been working on the machine "a week or so" preceding the time of his injury cutting leather

into washers; that he knew that if he let the cutter come down on his fingers it would cut them in two as it would cut the leather; that he had been employed by Mr. Bird, the superintendent, who directed him to go to the pattern maker, George Wainwright, who would show him how to run the machine; that Wainwright showed him how to run it and "set it up so as to show him how to do that"; that Wainwright took the cutter in his hand and set it up in the shaft and pinned it through with the pin that goes through the shaft and holds the cutter so that will not fall out, and then cut a piece of leather and put it underneath the cutter to show how the machine should be operated; that there was nothing to do except to let the cutter come down on the leather cutting out the washer and then shove the leather ahead for another washer to be cut out; that Wainwright showed him how to start and stop the machine by the lever, which was done by moving the lever one way for starting it and another way for stopping it; that the movement of this lever threw the belt from the loose pulley to the tight pulley, and vice versa; that when the machine was running the belt was on the tight pulley, and when it was desired to stop the machine the belt was by the lever pushed over on to the loose pulley; that when he undertook to put the cutter into the shaft on the machine in question, he pushed the upper end of it into the shaft, and just as he got it into place and took the key in his other hand, the machine started into movement, and the cutter started downward, and before he could get his hand out from under it his fingers were caught; that the machine was not moving when he began to put the cutter in; that he could not reach the lever used for starting the machine when he was holding the cutter; that he held it just as Mr. Wainwright told him to hold it; that he did not know how the machine started; that there was no one near enough to the lever to throw it at the time; that he did not start the movement by turning the balance wheel; that he had never known or heard of the machine starting before that time without some person starting it; that at the time the machine started the bottom of the cutter was about five or six inches above the surface of the plate below; that the cutter went down "quite fast"; that immediately after his hurt the belt that operated the machine was on the idler, or loose, pulley; that he did not remember whether the belt was in motion or not; that if any person had reached the balance wheel and moved it a little at the time he was working with the cutter and trying to put it in and lock it that could have caused the movement of the machine and have caused the cutter to come down on his hand, but that no one moved the balance wheel at that time; that he was working at the machine and intent on his work; that

he did not forget and put his hand on the balance wheel and move it himself.

W. R. Kirby testified for the plaintiff: That he was a machinist and erecting engineer and had been in that business for about 35 years. That he understood the construction and operation of machinery. That if the machine in question was properly constructed and in reasonably good condition it ought not to start in the absence of some human agency shifting the lever or turning the balance wheel. That he would not think it could start otherwise. That if it did start otherwise he would say that the machine was in a defective condition. That there were three defects that might start it: The loose pulley could run dry and get tight on the shaft and start it in that way; or the shaft collar could work loose on one end of the shaft and let the tight pulley run over the belt and throw the shifter, and that would start it; or the lever that handles the shifter could be out of plumb and lean a little to one side, and the belt lacing touch it and start it that way. That if any of these defects was present, there would have been no difficulty in detecting it if a man was inspecting the machinery.

J. M. Bird for the defendant testified that he was the superintendent of the company and had employed the plaintiff; that before he put him to work he told him about the kind of machine he was expected to work on, and took him to it and showed him "all about it," and told him if he thought he could handle it he could have the job, and said to him in a laughing way, "If you want to cut your fingers off, stick them under here." Appellee, however, denied that Bird had explained the workings of the machine to him.

Chas. Gamer for the appellant company testified that the machine upon which appellee was hurt was the most simple one in the shop; that immediately after the accident occurred he examined the machine to see if he could find out how plaintiff could possibly have been hurt; that he tried the shifter, and everything was in good condition; that there was nothing wrong with the machinery or shifter, or pulley or shaft, or any part of it that he saw; that this machine had never started up without some one starting it either by the lever or balance wheel that he knew of; that he started it into operation immediately after the accident and examined it, and turned the shifter, and every part of it was working properly then.

J. J. Gorman testified that he was in the shop at the time of the accident and close to the machine; that he ran to the plaintiff and grabbed the shifter to see whether or not the lever was running; that the fixed pulley was standing still; that he reversed the machine by turning the balance wheel by hand, and moved the cutter up so as to release his hand; that he did not see any-

thing wrong with the machine at all; that he never heard of its starting without some one shifting the lever or turning the balance wheel, either before or after the accident.

No witness testified to any special defect in the pulley, in the pulley shaft, in the lever, or in any other part of it that could have caused the starting of the machine. The cause of its sudden movement must necessarily be inferred, and that there was a defect sufficient to cause the movement is only an inference from the testimony to the effect that it could not have begun to move without some human agency unless there was a defect of the character mentioned by the witness Kirby. There was no testimony whatever that a like occurrence ever occurred either before or after the accident in question. The witnesses without exception stated that the machine was never known before or after the accident to start without any apparent cause. The plaintiff was admittedly shown how to operate the machine. The danger of placing his hand under the die while it was in operation was obvious. Of what danger then in the operation of the machine was it for which appellant company was liable on the ground that the appellee had not been warned thereof? If any, it must have been of the danger involved in an unexpected and sudden starting of the machine without human agency. If this never happened before the accident, it cannot be said as a matter of law, under the circumstances stated, that the appellant company was guilty of any negligence in a failure to warn appellee thereof, and yet this, in effect, is just what the charge in question assumes.

[3] The master's duty is to exercise ordinary care to furnish his employé with a safe place to work and with safe instrumentalities with which to do it. He is not an insurer, however, against sudden happenings or defects not known, and that cannot be known by the exercise of due care in inspection; but the charge quoted and to which error has been assigned ignores the issue of negligence in a failure to warn and assumes, in effect, that all that is necessary for the plaintiff to show in order to be entitled to recover on this issue is to establish by a preponderance of the evidence that he was inexperienced in the use and operation of machinery, that the defendant and those having control over him so knew and did not inform or warn him that he was subjected to a danger which he (the plaintiff) did not know and which he could have avoided had he been so warned and instructed, etc. The charge did not require the jury to find that the failure of the defendant to warn him was negligence. It was therefore upon the weight of the testimony. And for this error we think the judgment must be reversed and the cause remanded.

In view of a reversal, we deem it proper to briefly notice several other questions presented by the assignments. The special charges to the refusal of which complaint is made in the second and third assignments seem to exclude the issue of negligence in a failure to warn appellee; but we incline to the view that the court in his main charge failed to sufficiently present in affirmative form appellant's defenses, and therefore are of opinion that an appropriate charge embodying the affirmative matter presented in special charges set forth under the fifth, sixth, and eighth assignments should have been given.

The matters complained of in the ninth, tenth, eleventh, and thirteenth assignments related to alleged misconduct of the plaintiff's counsel and are not likely to occur upon another trial, and therefore need not be discussed.

[4] There was no error in not requiring the jury to visit and personally examine the machine in question, particularly in view of the court's explanation that since the accident there had been a fire on the premises, and that the machine was not shown to be in the same condition as at the time of the accident.

[5] The only further assignment that we deem it necessary to notice is the seventeenth, which complains of the action of the court in refusing to give the peremptory instruction to return a verdict for the defendant. It is insisted that this should have been done: First, because the overwhelming preponderance of the evidence shows that the accident must have occurred by reason of the plaintiff turning the balance wheel with one hand while he held the cutter in the perpendicular shaft with the other; and, second, because the record fails to show a case of negligence on the defendant's part; and, third, that under the undisputed evidence and the admissions of the plaintiff he must be held to be guilty of contributory negligence. We overrule the first and third propositions; but the second one might, perhaps, raise a very grave question had the evidence upon which appellant relies to establish this proposition been set out in his statement under this assignment, but this was not done, the statement only quoting the peremptory charge which the court refused. We do not feel called upon to search the record and collate the circumstances shown thereby which it would be necessary for us to consider in determining the proposition. It will therefore be overruled on this ground.

For the reasons stated, it is ordered that the judgment must be reversed, and the cause remanded for another trial.

### On Motion for Rehearing.

Counsel for appellee stress the case of G., C. & S. F. Ry. v. Hayden, 29 Tex. Civ. App. 280, 68 S. W. 530, which in some of its fea-

tures is similar to the case before us. But in that case the court was discussing the sufficiency of the evidence and not a charge. The court distinctly say that the charge was unobjectionable, and being so held, that the evidence was sufficient to support the verdict on the issues of negligence. The question here, however, is whether the court had the right in his charge to assume the existence of negligence in appellee's favor on the issue of appellant's failure to warn appellee of the danger shown. Had the issue been sufficiently submitted to the jury, and had the jury determined it favorably to appellee, it might be that we would find ourselves compelled to sustain the finding—a question, however, which we have distinctly declined to determine. Other cases cited by appellee have no better application, and the motion is overruled.