## VAN DE PUTTE v. CAMERON COUNTY WATER CONTROL & IMPROVEMENT DIST. NO. 7.

### No. 8531.

Court of Civil Appeals of Texas. San Antonio.

Feb. 4, 1931.

Wm. W. Beuhler, of San Antonio, for appellant.

Seabury, George & Taylor, of Brownsville, for appellee.

COBBS, J.

Appellant sued appellee to recover damages for the alleged wrongful and unlawful taking of two acres of plaintiff's land, appropriated by the defendant for the use and benefit of defendant without compensation to plaintiff and without condemnation proceedings, said two acres of land being used by defendant for the construction of an irrigation canal and drainage ditch across plaintiff's land; for the recovery of damages to plaintiff's fences, which were destroyed by defendant; for the recovery of damages to the ten acres of land adjoining the two acres taken by defendant, by reason of the diminution in value of said remaining ten acres; and for the recovery of damages arising by reason of defendant connecting its drainage ditch to plaintiff's natural lake and reservoir, draining water therefrom, and subjecting said lake to defendant's control.

Plaintiff alleged that his land was already served with an irrigation canal and drainage ditch, and that the acts of defendant did not therefore benefit his land; that the plaintiff's land had been used for ten years as a dairy, and the natural lake on his land had been in continuous use during all of that time to water cattle and for dairy purposes. The drainage ditch was constructed with its beginning, or source, extending into plaintiff's lake, and was of sufficient depth to completely drain said lake.

The Cameron County Water Control & Improvement District No. 7 admitted that it had constructed the irrigation canal and had dug a deep drainage ditch across plaintiff's land, and alleged that the same were constructed as a part of an irrigation and drainage system, and that plaintiff's lands had been benefited thereby; it admitted that some water had been permitted to drain through its drainage ditch out of plaintiff's lake, but alleged that it was done without the knowledge, consent, or approval of defendant. The district also pleaded certain deeds and contracts, which deeds and contracts plaintiff alleges cannot be interposed to benefit defendant.

Upon the findings of the jury, the court rendered judgment for the defendant, Cameron County Water Control & Improvement District No. 7, and that plaintiff take nothing by his suit, and that all costs incurred therein be adjudged against plaintiff, Juan Van De Putte.

The first proposition presents the contention that the verdict of the jury that $250 per acre was the reasonable market value of plaintiff's land just prior to the time defendant extended its canal across plaintiff's land and dug the drainage ditch across plaintiff's land is contrary to the evidence.

 There was sufficient testimony and other evidence in the case to support the jury's verdict, in addition to the fact that the jury visited the premises and viewed and inspected them in order to form their own conclusions.

Mr. Van De Putte, the plaintiff, and Mr. Lang, his tenant, testified as to the value of the real estate involved in this suit, and they placed it at $1,500 and $1,000 per acre, each respectively; and Mr. Van De Putte placed the value of the lake at $30,000 and Mr. Lang set it at $15,000.

Mr. Holly testified that, if the drain ditch were opened up so it could drain the lake, it would add materially to the value of plain-

tiff's land, because it is worth practically nothing without the drainage ditch.

Mr. H. H. Banker testified as follows:

"I would not have considered the land worth anything, as it was undesirable to grow anything on and had become water-logged.

* * *

"I would not give anything for it without the drain ditch there."

Appellant, in his second proposition, finds no evidence to support the jury finding that the land was increased in value $500 per acre by the digging of the drainage ditch and irrigation canal, and that sixty-nine and a fraction acres belonging to appellant were so enhanced.

Mr. Morton's testimony in regard to this reads as follows: "I have seen the drain ditch that has been put in out there for the draining of that country. I own some land out in that part of the country. I have known and been familiar with the development of this Van de Putte property since I have been out there, and I have throughout those years learned what the market value of lands were out there. In my opinion the digging of that drain ditch out there looking to the ultimate draining of that lake should enhance its value. If the drain ditch is not opened up and is left as it is now, it should not affect the market value of that land. If the drain ditch were opened up and all the water drained out of that lake, it should lower the water table out there, and that should raise the intrinsic and market value of that land materially. In my opinion the digging of that drain ditch and the concrete lining of the irrigation canals out there has materially helped the intrinsic, real and market value of that land. If the water table is lowered it has helped that land. If the seepage from that canal and lake is going to destroy the land, the draining of it would make it worth more than it was."

Mr. J. McCarty says: "I have lived in this country for eleven years, and have become familiar, I think, with the market value of lands out in that vicinity. My experience has been that drainage has all to do with the value of lands down here, and the lining of the canals with concrete has something to do with the value of the surrounding lands."

He further testified as to the value of the land: "I think the digging of that ditch through there has enhanced not only the value of the plaintiff's land, but also the land of other people around there. I would say that the land was worth more after the ditch and canal was put in there than it was before. In my judgment I would say the land was worth twice as much now as it was before the ditch was put there. Land that you can't grow any kind of crop on is not worth as much as land you can grow anything you want to on."

Mr. Holly says: "I am a farmer and farm irrigated land. I have had experience with land that was drained and that was not drained. I have observed that on the land of the plaintiff there has been a drain ditch dug right up to the edge of the lake. If the drain ditch were opened up and the lake drained out, in my opinion that would enhance the value of that land. It would materially increase the value of that land to drain it. If that drain ditch were opened up so it could drain that lake, it would add materially to the value of all that land there. Because it is practically not worth anything now, I would not pay the taxes on it for it. In my opinion if it were drained, it would be land suitable for many purposes. If you drain it and wash it out a few times, in my opinion it would be good land, otherwise it is not."

Mr. Banker testified: "In the light of my experience and observation in this territory, drainage is absolutely necessary and desirable where land is being irrigated. Prior to the time the District took over this proposition and lined the canals and provided for drainage, the water table on this land in question stood at about two or three feet from the top of the soil, and I would not have considered the land worth anything, as it was undesirable to grow anything on and had become waterlogged, and citrus will not live on it, and of course that affects the value of the land."

In regard to the injury done to plaintiff's fences, Mr. Jim Skelton testified as follows:

"At the time we built that ditch and canal there was a fence right down here on the lateral canal running North and South, and there is no fence there now. There was not much of a fence before. There was just a post here and there and the wire was tacked to the bushes along the canal. Some places we found two wires there and some places there was only one. The fence did not run in a straight line but zigzagged a good deal. That lateral canal there was not lined with concrete. All we did was dig it out and in doing so we had to clean the brush off the banks, and in that way we tore down the fence. I have talked to Mr. Lang, Mr. Van de Putte's tenant, about putting the fence back, and offered to put the fence back as we found it and he said it was not worth while. The fence that was there was not of any value. It zigzagged along through the brush on the canal and the wire was worn and rotten. I had instructions from the District that whenever I tore a fence down to repair it, and I offered to do that at that place, and if Mr. Lang had permitted me I would have put that fence back in better condition than it was when I found it.

"I imagine that fence I have testified about was about 400 yards long. That fence is torn down now. I did not have anything to do with

the fence on the plaintiff's land that is along the Alice Road. There is a fence along the east side of the plaintiff's land on the Alice Road on the lower end, but on this block where the ditch is, above it there is no fence there. I work along the canal that goes through the plaintiff's land and know where his land is situated. That drain ditch and canal that has been extended across his land goes on under the Alice Road, reaching the Alice Road at the east line of the plaintiff's land. There is a fence along there on one side but not on the other. I imagine that fence is in the neighborhood of fifty yards long. There is no fence on the other side of the canal until you get to the next road crossing. It looks like there has been a fence there at one time. There was no fence there as far back as two or three years ago."

Appellant's argument under his first proposition is erroneous, in that he assumes that the only testimony with regard to the value of the land in controversy is that of himself and his tenant. But there is testimony of men who had lived in the vicinity for years, and had bought, sold, and traded land identically like the appellant's, and were in a position to state the value of appellant's real estate. Houston Belt & Terminal Ry. Co. v. Vogel (Tex. Civ. App.) 179 S. W. 268.

Appellant very correctly anticipated our stress of the fact that the jury visited the premises, and lightly casts it aside, quoting from a Kentucky case decided in a state which has a statute providing when, where, and how a jury may visit the premises. Our investigation reveals that Texas has never seen fit to pass a statute in this regard, but follows the common-law rule and, as the court in General Bonding & Casualty Co. v. Mosely (Tex. Civ. App.) 174 S. W. 1031, in substance, states that there was no statute in Texas authorizing the right of the jury to visit the premises, and the appellate courts have usually left it to the sound discretion of the trial judge where no abuse is shown. A review of the cases will show that the trial courts have discouraged this practice, and appellate courts have not looked on it with special favor. Smith v. Texas, 42 Tex. 444; Gamer Co. v. Gammage (Tex. Civ. App.) 147 S. W. 721; Whaley v. Sloss-Sheffield Steel & Iron Co., 164 Ala. 216, 51 So. 419, 20 Ann. Cas. 822; Peoria & Farmington Ry. Co. v. Barnum, 107 Ill. 160; Culbertson & Blair Packing & Provision Co. v. City of Chicago et al., 111 Ill. 651; Parks v. City of Boston, 15 Pick. (Mass.) 198; Omaha & R. V. R. Co. v. Walker, 17 Neb. 432, 23 N. W. 348; McReynolds v. B. & O. Ry. Co., 106 Ill. 152; Kiernan v. Chicago, S. F. & C. R. Co., 123 Ill. 188, 14 N. E. 18.

However, we do not propose to stand on this proposition alone, but corroborate and supplement it by the actual testimony in the record, which substantiates the jury finding. There was testimony that the land was worth practically nothing, that it was worth little, that it was worth $1,000 per acre, and that it was worth $1,500 per acre; and the jury of twelve men residing in that community, bound to have a general knowledge and understanding of land values there, after hearing the testimony, visited the premises and made a personal survey of the land, then returned the valuation of the land per acre at $250.

The appellant complains of the jury finding as to the fences, and in so arguing appellant entirely overlooks Mr. Skelton's testimony showing the fences to have been originally merely remains of what had been a barbed wire fence at one time, and, when preparations were made to rebuild the fence, Mr. Lang, the appellant's tenant, informed Mr. Skelton that there was no necessity of rebuilding the fence, for it was not worth while. His testimony shows that there was no fence on the east boundary, Alice road, of appellant's land, north of the portion where the canal enters the appellant's land and until the next road crossing is reached. The appellant quotes from himself and his tenant, Mr. Lang, with regard to the fences, in his third proposition, and refers to this testimony as uncontradicted. This testimony is very materially contradicted, especially in view of the fact that the jury, after hearing these controverting statements, visited the actual stationary material facts and then mentally decided to render a decision thereon after satisfying their senses of sight and hearing.

The fact that the jury visited the premises is alone sufficient to sustain the verdict; and there is sufficient testimony alone in the record to sustain every item complained of.

1 Thompson on Real Property, § 280, p. 359, contains the following definition of easement: "An easement is a privilege without profit which one has for the benefit of his land in the land of another."

Section 299, p. 383, 1 Thompson on Real Property, states: "An easement which by grant, reservation or prescription is appurtenant to land is not a mere privilege to be enjoyed by the person to whom it is granted or by whom it is reserved. It passes by deed of such person to his grantee and follows the land without any mention whatever. An appurtenant easement, being an incorporeal right, is incapable of existence separate and apart from the corporeal property to which it is appurtenant, and is as a necessary concomitant, and must pass with the land upon conveyance thereof."

■■■ The above general statements of law fit exactly the fact situation here presented; for the West Brownsville Canal Company, a

corporation owning a mass of realty, had installed, on a small basis, an irrigation company. Thereafter, retaining enough real estate for its business as an irrigation company and specially reserving easement rights to go upon the land conveyed in order to enlarge upon and perfect its system, it conveyed all surplus land to the Brownsville Land & Improvement Company. The improvement company then, in turn, divided the land up into small plots and sold to individuals, one of whom was the appellant, and in each deed specifically incorporated the deed to it from the canal company, and specifically set up and reserved to its predecessor easement rights for extending and perfecting irrigation canals and drainage ditches. Later, as the necessity arose for a perfected irrigation and drainage system, the canal company sold out to the Cameron County Water Control & Improvement District No. 7, a corporation well able to handle the enlarged affairs, and in the conveyance passed all its lands, easements, rights of. way, and irrigation and drainage works. Then this company, the appellee, put to use the easement conveyed to it, by running a concrete lined irrigation canal and a drainage ditch over appellant's lands, in an effort to lower the water table and make possible a profit-paying citrus or truck farm out of a theretofore useless stock wallow. That the easement reserved by the canal company passed to the appellee is unquestioned, for the appellant goes no further than to deny this in his pleading. That the appellee made use of the easement so conveyed to him is admitted by his pleadings, and now the appellant, apparently as a last resort, expends efforts to collect nominal damages and costs, claiming a technical injury to a legal right. So far as we can find, the law set out in appellant's fourth proposition is absolutely correct. But nominal damages "are given not as an equivalent for the wrong but in recognition of a technical right, and by way of declaring the right." 17 C. J. § 58, p. 720.

"Nominal damages are regarded as the subject of a substantial legal claim, and a party is entitled to them in case he can show any injury to his legal right." 17 C. J. § 58, p. 720.

■ We have carefully examined the requested charges, and they seem to have been effectively embraced and given in the court's several issues, as far as they have been requested, and we find no error in their refusal, and, if any, it was harmless.

The assignments have been in all things considered and, finding no substantial error committed, the judgment is affirmed.