James S. McDANIEL, and Wife Mary Alice McDaniel and Charles Ralph McDaniel, Appellants,

v.

Clayton W. CALVERT, Jr., and Wife Francine M. Calvert, Appellees.

No. 2–93–192–CV.

Court of Appeals of Texas, Fort Worth.

May 4, 1994.

Clary & Clements, Inc., and Durant F. Clements, Bridgeport, for appellants.

Patrick Morris, Brock Smith, Decatur, for appellees.

Before FARRIS, WEAVER and HICKS, JJ.

## OPINION

FARRIS, Justice.

Clayton W. Calvert, Jr. and Francine M. Calvert (Calverts), appellees and plaintiffs below, obtained a permanent injunction against James S. McDaniel, and wife Mary Alice McDaniel, and Charles Ralph McDaniel (McDaniels), appellants and defendants below, enjoining them from obstructing a roadway easement. On appeal, McDaniels claim the trial court erred because Calverts do not have an enforceable interest in the roadway easement, and the grantors of the easement did not intend the roadway to remain free from obstruction. We affirm because the easement is appurtenant, it was created to provide the abutting landowners access to the roadway, and McDaniels' gate interferes with this purpose.

The subject roadway is more than seventy-seven years old. It is a fenced lane, running south, from what is currently known as Flowers Ranch to State Highway 2210. No gates existed between Flowers Ranch and the highway from 1959 until 1992 when McDaniels constructed theirs.

In April 1981, all the property owners whose land abutted the roadway granted an express thirty-foot roadway easement to the Veteran's Land Board. Then, in June 1981, they granted the same easement to the Federal Land Bank of Texas and to Hill, one of the abutting landowners.[1] Hill owned land

---

1. The express easements were granted to assist Hill in meeting the requirements of the Veteran's

east of the roadway that abutted McDaniels' land which lay west of the road. Calverts purchased their tract from Belew who purchased it from Hill.

In point of error one, McDaniels challenge Calverts' standing to enjoin their construction of the gate.

■ First, McDaniels claim the easement was granted for the benefit of Hill; therefore, it is an easement in gross which could not have been transferred or assigned to Calverts.[2] *See Farmer's Marine Copper Works, Inc. v. City of Galveston,* 757 S.W.2d 148, 151 (Tex.App.—Houston [1st Dist.] 1988, no writ). However, an easement is never presumed to be in gross, when it can fairly be construed to be appurtenant.[3] *Ginther v. Bammel,* 336 S.W.2d 759, 763 (Tex.Civ. App.—Waco 1960, no writ). Whether an easement is in gross or appurtenant must be determined by a fair interpretation of the grant creating the easement, aided if necessary, by situation of property and surrounding circumstances. *McWhorter v. City of Jacksonville,* 694 S.W.2d 182, 184 (Tex. App.—Tyler 1985, no writ).

In *Strauch,* where the grant of an easement provided that "the terms, conditions and provisions of this contract shall extend to and be binding upon the * * * successors and assigns of the parties hereto," the court held the right conferred therein was not a mere personal right in the original grantee, but a vested right which could be assigned under the grant. *See Strauch v. Coastal States Crude Gathering Co.,* 424 S.W.2d 677, 683 (Tex.Civ.App.—Corpus Christi 1968, writ dism'd). Like the grant in *Strauch,* the express easement here provides, "the roadway easement[s] [are] not exclusive, but shall be held and used jointly and in common, by both the grantors and grantees herein, and their respective heirs and assigns in title to any lands abutting said roadway." A fair interpretation of this grant is it was created to

benefit the property abutting the roadway, not a specific person. Consequently, it is an easement appurtenant.

■ An appurtenant easement is easily transferable. A transfer of the dominant estate automatically includes the easement across the servient tenement's land. *See Van De Putte v. Cameron County W.C. & Improvement Dist. No. 7,* 35 S.W.2d 471, 473 (Tex.Civ.App.—San Antonio 1931, no writ). Therefore, the easement was automatically transferred to Calverts when Belew assigned his interest to them.

■ Next, McDaniels argue Calverts possess no interest in the easements because the conveyances from Hill to Belew and from Belew to Calverts do not contain the legal descriptions of the easement. The conveyances do however include habendum clauses granting the recipients the "premises, together with all and singular rights and appurtenances thereto in anywise belonging, unto the said VETERANS LAND BOARD OF THE STATE OF TEXAS, its successors and assigns forever...." Moreover, the deed conveying the affected land need not specifically mention an existing easement, because the easement follows the land without any mention whatever. *Id.* Therefore, regardless of whether the conveyances described the easement, it was conveyed with the land.

■ Finally, McDaniels claim because the conveyances included a "subject to" clause, naming the roadway easement of April 1981, the easement was excluded from the grant. Contrary to McDaniels' claim that the "subject to" language excluded the interest from the grant, it simply explained or limited the warranty in the conveyance.

The trial court found the roadway easement divides the respective real properties owned by McDaniels and Calverts, and such

---

Land Board to obtain financing for the purchase of the property currently owned by Calverts.

**2.** An easement in gross is personal to the grantee only, and it is generally not assignable or transferrable. *Farmer's Marine Copper Works, Inc. v. City of Galveston,* 757 S.W.2d 148, 151 (Tex. App.—Houston [1st Dist.] 1988, no writ).

**3.** An easement appurtenant is an easement interest which attaches to the land and passes with it. *First Nat'l Bank v. Amarillo Nat'l Bank,* 531 S.W.2d 905, 906 (Tex.Civ.App.—Amarillo 1975, no writ).

boundary lines have existed for more than twenty years. These findings are supported by the record.[4] Therefore, when the easement was granted, McDaniels and Hill each owned one-half of the property subject to the easement. Because the grant imposed obligations and conferred benefits on both the *grantors* and *grantees,* the document, in effect, created both a positive and a negative reciprocal easement. Consequently, the "subject to" language in the subsequent deeds alerted the grantees of the limitation on their property, rather than excepted rights under the easement.

Because the easement is appurtenant, because an appurtenant easement follows the land without mentioning it in future conveyances, and because the "subject to" language in the deeds merely limited the grantee's rights, Calverts have an enforceable interest in the roadway easement. Point of error one is overruled.

In points of error two and three, McDaniels challenge the trial court's finding the parties to the express easement intended that the roadway remain unobstructed, and its holding they could not place a gate across the roadway where it traversed the south line of their tract.

 Whether a party has the right to erect gates depends upon the intent of the parties. The parties' intent can be determined by considering the terms of the grant, its purpose, the nature and situation of the property, and the manner in which it is used. *Gerstner v. Wilhelm,* 584 S.W.2d 955, 958 (Tex.Civ.App.—Austin 1979, writ dism'd).

Here, the last paragraph of each grant provides, "[T]his instrument shall never be construed as creating in or granting to the public any rights whatever, nor as a dedication of a public roadway." McDaniels claim this provision demonstrates the parties intended to maintain the roadway as a private road and they intended to retain their ownership rights including the right to place gates on private property. To reach this conclusion, McDaniels had to read a lot into this provision, and had to avoid considering the purpose of the grant, the nature of the property, and the manner in which it is used.

Considering all the terms of the grant, instead of one isolated provision as McDaniels did, it is evident the easement was granted to provide the abutting landowners access to the roadway. In fact, this was the concern of the Veteran's Land Board when Hill purchased the property. Considering the nature and situation of the property when the easement was granted and the manner in which it is used, it is evident access to the roadway was to be unobstructed since no gates existed at that time and none had existed in more than twenty years when McDaniels constructed theirs.

A servient estate cannot interfere with the right of the dominant estate to use an easement for the purpose for which it was granted or sought. *Bickler v. Bickler,* 403 S.W.2d 354, 359 (Tex.1966). Any use by others that interferes with the exercise of superior easement rights must yield. *Pittman v. City of Amarillo,* 598 S.W.2d 941, 944 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). The evidence demonstrates erecting gates would greatly affect the use of Calverts' property. Therefore, the trial court did not err in ordering McDaniels to remove the gate. Points of error two and three are overruled.

The judgment is affirmed.

---

**4.** McDaniels acknowledged they had only a fifteen-foot easement to give on the portion of the easement running north and south, and a licensed surveyor testified that the property lines of the property owners ran to the center of the road.