In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO.  09-12-00590-CV
_____

**MIKE EMMONS AND LORETTA EMMONS, Appellants**

**V.**

**BOBBY BABAK BADANFIROUZ, KATHERINE BADANFIROUZ,
AND LAWRENCE F. HEGAR JR., Appellees**

On Appeal from the 9th District Court
Montgomery County, Texas
Trial Cause No. 10-04-04544 CV

## MEMORANDUM OPINION

Mike and Loretta Emmons appeal the trial court's declaratory judgment in favor of appellees Bobby Babak Badanfirouz, Katherine Badanfirouz, and Lawrence F. Hegar Jr. in a dispute over an express easement. Appellants argue the trial court erred in finding the easement did not allow them to maintain a gate on the property at issue. Finding no error, we affirm the trial court's judgment.

The Hegar family has owned certain real property (approximately 106 acres) in Montgomery County since the 1800s. In 1978, an express easement was granted by Robert Baker and his wife to the Hegars, so that they could access their property. The easement expressly conveyed to Hegar, among others:

> The nonexclusive free and uninterrupted use, liberty and privilege of passage at all time for ingress and egress, both pedestrian and vehicular, together with the right to install and maintain water, power, telephone and other utilities, in, along, upon and across that certain tract or parcel of land . . . .

Lawrence Hegar inherited the property and owns an undivided interest in the property. He uses the property for recreational purposes and leases it out for hunting.

The Bakers sold approximately sixty-five acres (contiguous to the Hegars' property) to the Powells, who then sold the property in 2008 to the Badanfirouzes. The Badanfirouzes live on their property. Both the deed to the Powells and the deed to the Badanfirouzes expressly conveyed a 67.50-feet-wide road and utility easement, which is the same strip of land conveyed as an easement to Hegar.

In addition to conveying the dominant estate, the Bakers also sold the servient estate, and ultimately the Emmonses purchased the servient estate in 2003. The Emmonses reside on the property, which is contiguous to the properties owned

2

by Hegar and the Badanfirouzes. The easement borders, but does not go through, the Emmonses' property.

After the Emmonses erected a gate across the easement, a dispute arose regarding whether the gate violates the easement language. Appellees[1] sued appellants under the Declaratory Judgment Act and sought a judgment that the gate violates the easement's grant of "*free and uninterrupted* use, liberty and privilege of passage at *all* time for ingress and egress[.]" *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 2008). Appellees sought a temporary and permanent injunction ordering appellants to remove the gate and all other obstructions, and prohibiting appellants from erecting any form of obstruction or interference with the future use of the easement by appellees and their successors, heirs, and assigns. In addition, appellees asserted claims for trespass to try title and intentional interference with property rights.

Appellants filed their answer and counterclaim against appellees for a declaratory judgment stating that the easement language allows appellants to construct a gate and that the gate currently constructed does not violate the terms of the easement. Appellants sought a permanent injunction "enjoining [appellees] to close the gate" when they entered and exited the easement. The trial court

---

[1] Appellee Katherine Badanfirouz was not a plaintiff in the original petition but was subsequently added as a plaintiff in an amended petition.

granted the appellees' application for temporary injunction and ordered appellants to leave the gate open pending final trial on the merits.

During the bench trial, Michael Emmons testified that the gate in question is never locked and is merely an "inconvenience." He explained that he has had problems with trespassers, vandals, and people dumping garbage on his property. He testified that since he has erected the gate these issues have been resolved. He admitted that he had not put a fence between his property and the easement but instead opted to construct the gate at issue here.

Powell, the prior owner of the Badanfirouzes' property and to whom the Bakers originally conveyed the easement, also testified. He explained that the easement was originally going to be dedicated as a county road and that no gates were in place or intended when he constructed the road to access his newly built residence in 1980. The easement was the only access to his property. Powell testified there were never any gates placed across the easement during the approximately thirty years he owned the property.

According to Hegar, no gates blocked the road up until the time the Emmonses purchased the land, and there had never been any express intent to block the road. Hegar explained that the road is the only access to his property, and he has used the road to access his property since 1978.

4

According to the appellees' pleadings, the Badanfirouzes' property was accessible exclusively via the easement in question when they purchased the property. After the dispute regarding the easement arose, the Badanfirouzes purchased another easement for access to twenty of their sixty-five acres. Access was "only for the [Badanfirouzes'] family, friends, and traffic caused by normal residential use," and access for "commercial construction, cattle, or heavy equipment moving" was prohibited. The deed also provided that "[u]pon the sale of any other portion of the remaining properties adjoining the described 20 acres[,]" Badak Badanfirouz will convey access to that property through the easement "currently in place[,]" meaning the easement involved in this suit.

The trial court concluded in its final judgment that the easement language "prohibits the construction or maintenance of gates or fences across said easement, which would, by definition, *obstruct* the *nonexclusive free and uninterrupted* passage at all time for ingress and egress that is necessary for Plaintiffs, their successors, heirs and assigns to reach their properties and home." The trial court entered its declaratory judgment in favor of Hegar and the Badanfirouzes and ordered the Emmonses to remove all gates from the easement. The judgment prohibited the Emmonses and any and all successors in interest from constructing

gates, fences or other obstructions, on or across the easement. The trial court awarded attorney's fees and costs against the Emmonses.

On appeal, the Emmonses argue that the trial court's construction of the easement prevented them from using a gate which enabled them to contain livestock and to protect against trespass and vandalism to their property. According to appellants, the trial court's construction of the easement language "placed too high of a burden on the servient estate and was more than necessary to provide the need and convenience of the dominant estate." Appellants maintain that construing the phrase "free and uninterrupted" to prohibit gates does not give the unambiguous terms of the easement language their clear and intended meaning, and would amount to allowing extrinsic evidence to be inserted within the four corners of the document. They contend that appellees still enjoy ingress and egress across the easement to their property, which appellants assert is the intent of the easement. Appellants argue that Hegar only accesses the property three-to-four times a year and that the Badanfirouzes have an alternate access to their property. According to appellants, the Badanfirouzes have only on "one unusual circumstance" been denied ingress or egress.

Appellees maintain that the easement expressly prohibits interruptions on the roadway and thereby provides for "free and uninterrupted" access. They argue that

6

under the plain language of the easement, an obstacle or obstruction such as a gate is an interruption to free access. Appellees assert they presented evidence that the intention of the parties at the time of the easement's creation was that no gate would ever be placed across the easement; that since the initial grant of the easement over thirty years ago no gate had ever been placed across it, and that the easement is used as a roadway for access to residential property.

An easement is a nonpossessory interest in land that authorizes its holder to use the property for a particular purpose. *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002). A servient estate cannot interfere with the right of the dominant estate to use an easement for the purpose for which it was granted or sought. *McDaniel v. Calvert*, 875 S.W.2d 482, 485 (Tex. App.—Fort Worth 1994, no writ) (citing *Bickler v. Bickler*, 403 S.W.2d 354, 359 (Tex. 1966)). The easement holder must make reasonable use of the right and not unreasonably interfere with property rights of the owner of the servient estate. *San Jacinto Sand Co. v. Sw. Bell Tel. Co*., 426 S.W.2d 338, 345 (Tex. Civ. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). Appellees' easement here originated from an express grant.

The basic principles of contract construction and interpretation apply to express easements. *Marcus Cable*, 90 S.W.3d at 700. Under those principles, the

7

court must first determine whether the wording of the agreement is ambiguous. *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex. 1996). A contract worded so that it can be given a definite legal meaning is not ambiguous. *Marcus Cable*, 90 S.W.3d at 703. "When an easement is susceptible to only one reasonable, definite interpretation after applying established rules of contract construction, we are obligated to construe it as a matter of law even if the parties offer different interpretations of the easement's terms." *Id.* (citing *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999)).

If the court finds an easement agreement to be unambiguous, the court must then determine as a matter of law the parties' intent as expressed within the four corners of the instrument. *See Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). The contracting parties' intentions, as expressed in the grant, determine the scope of the easement. *Marcus Cable*, 90 S.W.3d. at 701 (citing Restatement (Third) of Property (Servitudes) § 4.1 (2000) (providing that a servitude "should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding the creation of the servitude, and to carry out the purpose for which it was created")).

"When the grant's terms are not specifically defined, they should be given their plain, ordinary, and generally accepted meaning." *Marcus Cable*, 90 S.W.3d

8

at 701. The easement language here does not merely grant rights for ingress and egress to the dominant estate but also specifically provides for the "nonexclusive free and uninterrupted use" of the easement. The term "free" includes the meaning "not obstructed or impeded[.]" Webster's Third New International Dictionary 904-05 (2002). The term "uninterrupted" means "continuous[,]" which means "stretching on without break[.]" *Id.* at 493-94, 2499. From the easement's language, it is clear that the grantors of the easement intended an unobstructed access. *See, e.g., Burns v. McDaniel*, 158 S.W.2d 826, 827 (Tex. Civ. App.--Eastland 1942, no writ) (Trial court correctly required removal of locks but should have rendered judgment requiring removal of the gates from the roadway, since the deed conveying and reserving a certain parcel of land ("'as a pass-way for the traveling public as well as for the grantors into and upon the lands adjacent to and eastward from the parcel of land herein conveyed"' intended that the conveyed and reserved roadway be unobstructed.); *Calvert*, 875 S.W.2d at 485 (Easement language provided the abutting landowners access to the roadway and "[c]onsidering the nature and situation of the property when the easement was granted and the manner in which it is used, it is evident access to the roadway was to be unobstructed since no gates existed at that time and none had existed in more than twenty years[.]"); *Gerstner v. Wilhelm*, 584 S.W.2d 955, 958 (Tex. Civ.

App.—Austin 1979, writ dism'd) (Where there was evidence that, prior to buyer's purchase of the servient estate, the seller explained to him that if the roadway was ever fenced, the fence was to be along his side of the roadway, a reasonable construction of the terms of the easement granting appellees "free and uninterrupted use, liberty and easement of passing" is that appellees with the dominant estate were to have a way free of gates and fences.).

In support of their arguments, appellants cite to *Barrow v. Pickett*, No. 01-06-00664-CV, 2007 Tex. App. LEXIS 8905 (Tex. App.—Houston [1st Dist.] Nov. 8, 2007, no pet.) (mem. op). In *Barrow*, the easement agreement conveyed to the grantees a "'thirty foot access easement on, over, and across the Easement Tract. . . .'" 2007 Tex. App. LEXIS 8905, at *2. The agreement provided that the easement "be 'a perpetual, non-exclusive easement for pedestrian and vehicular ingress, egress, and access on, over, and across the Easement Tract. . . .'" *Id.* at **2-3. Barrow, the purchaser of the servient estate, erected a gate across the easement. *Id.* at **2-4. Pickett, the owner of the dominant estate, could only access his land by stopping, opening the gate, driving through, and closing the gate. *Id.* The gate was not secured to prohibit access. *Id*. at *4. A dispute arose regarding the gate and Pickett sued Barrow to permanently enjoin Barrow's placement of a gate across the easement. *Id.* at *5.

The First Court of Appeals held that the easement agreement did not specifically grant the dominant estate the right to an easement "'free and uninterrupted' by gates[,]" but "provide[d] only for ingress and egress to the dominant estate." *Id.* at *10. The Court held that "[t]o find a grant of unrestricted passage, therefore, we would have to read terms into the four corners of the document that are not there, which we cannot do." *Id.* However, in the present case and as noted above, the easement language in fact grants appellees the "nonexclusive free and uninterrupted use" of the roadway. *See Ferrara v. Moore*, 318 S.W.3d 487, 492 n.3 (Tex. App.—Texarkana 2010, pet. denied) (distinguishing *Barrow* because the easement in *Barrow* "only allowed for access to the dominant estate and nothing more[,]" and because in *Barrow* gates had been erected on the easement in the past). The trial court here did not err in its construction of the easement. Appellants' issue is overruled. We affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on November 6, 2013
Opinion Delivered December 19, 2013

Before McKeithen, C.J., Kreger and Horton, JJ.

11