Larry Ray ELLIOTT and Romona A.
Elliott, Appellants,

v.

Henry Clifford ELLIOTT, Appellee.

No. 1463.

Court of Civil Appeals of Texas,
Corpus Christi.

March 20, 1980.

Rehearing Denied April 24, 1980.

Daniel Hayes, Bay City, for appellants.

James A. Smith, Port Lavaca, for appellee.

OPINION

NYE, Chief Justice.

This is an easement case. Larry Ray Elliott, and his wife, Ramona A. Elliott, brought suit to enjoin Larry's uncle, Henry Clifford Elliott, from interfering with their use of a driveway which crossed defendant's property. In response to special issues, the jury found in favor of plaintiffs. The trial judge, however, granted defendant's motion for judgment non obstante veredicto and entered a take nothing judgment against plaintiffs. Plaintiffs appeal.

Plaintiffs purchased a 1.325 acre tract of land (the shaded portion of the map below) from Vernon A. Leissner on October 6, 1977. The defendant is the owner of a 3.82 acre tract of land situated immediately south of plaintiffs' tract between plaintiffs' land and State Highway 35. (Plaintiffs' land has no other access.) The driveway in question connects plaintiffs' property with Highway 35 by crossing the northeast portion of defendant's triangular tract. The record shows that, before this dispute arose, John Dollery, one of plaintiffs' predecessors in title, had used the driveway continuously for at least a period of 32 years, and possibly, for as long as 45 years. The defendant erected a fence across the northern entrance to the driveway and refused to permit its further use.

Plaintiffs filed suit alleging, in essence, that John W. Dollery "built a road (the driveway) from Highway 35 to his property in the 1930's or early 1940's," pursuant to an express easement contained in Dollery's deed, and that defendant acquired title to his particular tract of land after the granting of the easement to Dollery. Plaintiffs pled, in relevant substance, that they were entitled to an easement for right-of-way purposes based on three theories: 1) an express grant; 2) prescription; and 3) estoppel. Defendant filed a general denial.

This case involves a bitter family fight over access from plaintiffs' property to Highway 35. The record suggests that all of the land in the immediate area in question was, at one time, part of a much larger individual tract owned by an ancestor of most of the witnesses and all of the current parties in this case. The vague and confusing record shows that, over the years, certain family members acquired and traded out ownership interests pursuant to oral agreements, executed warranty deeds, executed quit claims deeds, made verbal assurances based upon assumed ownership rights, and participated in other transactions without concern to the resulting legal consequences. Only some of the instruments supporting these transactions were offered into evidence. Other instruments containing lengthy metes and bounds descriptions of land were introduced into evidence without identifying the location of the land in question and without clarifying the relationship to the issues in the case.

Defendant testified that his mother, Melissa Rouse, had originally owned the tract of land located north of his 3.82 acre tract since "about 1909" when "Grandpa Elliott gave it to her." The defendant stated that he and two of his brothers, Oliver Elliott and Alvie Elliott, had originally owned undivided interests in a tract comprising approximately 50 acres out of which the defendant later acquired his 3.82 acre tract by a partition deed executed in 1942. The defendant stated that in 1931 his mother, Melissa Rouse, orally swapped her northern tract of land for Oliver Elliott's undivided one-third share of the southern tract and then, on behalf of Oliver, sold the northern 15.357 acre tract to Dollery. A deed executed on July 28, 1931, by Oliver Elliott conveying his undivided portion of the southern tract to Melissa Rouse was introduced into evidence. This deed was executed approximately two months after Melissa Rouse executed the deed on the same property to Dollery.

The 1931 deed from Melissa Rouse to Dollery contained the following recitation: ". . . containing within said boundaries 15 and 3/10th acres, more or less, same being out at the south end of an original 20.3 acre tract formerly owned

by Gertrude E. A. Elliott in her own right, and known as the 'Homestead Place,' *together with a right-of-way over other lands of grantor between this tract and State Highway N. 58, at S.E. corner, . . ."* (emphasis added)

The 1977 general warranty deed from Leissner to the plaintiffs contained the following recitation:

"As part of the consideration for this conveyance, the Grantor herein conveys unto the said Grantees herein all of his right, title and interest *in and to that certain easement contained in that certain Deed dated May 27, 1931,* from Melissa Rouse to John W. Dollery, . . ." (emphasis added)

Approximately ten years after the 1931 deed to Dollery was executed, a quit-claim deed to Dollery which covered the same property was executed on July 15, 1941, by Melissa Rouse and several other relatives, including the defendant Henry Elliott. This 1941 deed contained a similar recitation concerning the easement which stated as follows:

". . . together with a right-of-way over other lands or (sic) grantors between this tract and Highway formerly known as No. 58, and now known as No. 35 at the southeast corner of this tract."

Defendant acknowledged that his signature appeared on the 1941 quit claim deed to Dollery, but stated that he could not recall any of the facts or circumstances surrounding its execution. Defendant stated that at the time the 1941 deed was executed, he, his mother Melissa Rouse, and his brother (Oliver) owned undivided interest in the southern tract, and that he assumed possession and ownership of the 3.82 acre tract pursuant to a partition deed executed by them on May 14, 1942. A certified copy of this partition deed was introduced into evidence.

The deed (or deeds) conveying land from Dollery to plaintiffs' immediate predecessor in title, Vernon A. Leissner, was not introduced into evidence. There is testimony in the record to the effect that plaintiffs moved into a rental house located on that portion of the property they eventually purchased about seven months prior to the time they purchased the property. Plaintiffs initially were tenants of Dollery, and sometime during this intervening seven month period, Leissner purchased all or a portion of the 15.357 acre tract, out of which, 1.325 acres was conveyed to the plaintiffs.[1]

Defendant testified, on the other hand, that he was the one who built the driveway in question, and he did so in 1945. It was his testimony that Dollery started using the driveway at that time. According to defendant, he and Dollery had an agreement whereby each used a part of the other's property. Defendant stated that Dollery asked him to put in the driveway in exchange for defendant's use of some of Dollery's property for a garden. The defendant admitted that at least from 1945 to 1977, Dollery, his tenants and guests used the driveway openly and exclusively until he closed the driveway after hearing that Dollery planned to sell his property.

In addition to this conflicting evidence concerning the driveway located on defendant's property, there is some conflicting evidence in the record concerning still another driveway that provided access to Highway 35 which crossed the adjacent land owned by George Elliott, Sr., and not by defendant.

Based upon this and other evidence adduced at trial, the jury found: that plaintiffs, or their predecessors in title, acquired the easement in question by adverse possession (special issues 1 and 2); (special issue no. 3) that Dollery and defendant made an agreement for a road easement that would remain open for the benefit of Dollery's land; (special issue no. 4) that defendant's promise that such road would remain open

1. Although there is testimony to the effect that Leissner purchased "the land" from Dollery, the record is not clear as to whether Leissner purchased the entire 15.357 acre tract or a smaller portion from which plaintiffs' tract was carved. In addition, the recitations contained in the deed from Leissner to plaintiffs indicate that the ownership of the tract passed from Dollery to another before being conveyed to Leissner.

for the benefit of Dollery's land induced Dollery to accept such agreement; (special issue no. 5) that Dollery, in reliance on such agreement, made valuable improvements to his property; and (special issue no. 6) that the value of such improvements on plaintiffs' land would be diminished and their usefulness impaired if the easement were extinguished. In addition, the jury failed to find that, after the execution and delivery of the 1941 deed from Rouse to Dollery, that a road easement was used with the acquiescence of both the grantor and grantee.

After the verdict was received, plaintiffs filed a motion for judgment on the verdict on the basis that the jury's verdict sustained plaintiffs' claim of an easement by prescription and of an easement by estoppel. Defendant filed a motion for judgment non obstante veredicto on the basis that no fact issue was raised concerning an easement by prescription because: 1) there was no evidence of any use of the easement in question for a continuous period in a notorious, uninterrupted and hostile manner; 2) the undisputed evidence showed that the easement was used under an agreement between Dollery and defendant; and 3) the undisputed evidence showed a break in the chain of title. Defendants' motion also requested the trial court to disregard the jury's answers to the estoppel theory special issues as being immaterial because the undisputed evidence established that the plaintiffs had actual knowledge and notice prior to the time they purchased the property that the driveway had been closed by a fence which had been erected at the property line. Defendant's motion to disregard the jury's answers which favored plaintiffs' position repeated substantially the same grounds contained in his motion for judgment non obstante veredicto. The trial judge granted defendant's motions, without specifying grounds upon which he relied, and entered judgment against plaintiffs.

▆▆ The granting of a motion for judgment non obstante veredicto is justified only when an instructed verdict is proper.

*Eubanks v. Winn,* 420 S.W.2d 698, 701 (Tex. 1967); Rule 301, Texas Rules of Civil Procedure. It is proper only under very limited circumstances, i. e., 1) that a defect (specifically indicated) in the opponent's pleading makes it insufficient to support a judgment; 2) the truth of fact propositions which, under the substantive law, establish the right of the movant, or negative the right of his opponent to judgment; or 3) that the evidence is insufficient to raise an issue as to one or more fact propositions which must be established for the opponent to be entitled to judgment. *Hendrix v. Jones-Lake Const. Co.,* 570 S.W.2d 546 (Tex. Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.); *Newitt v. Camden Drilling Co.,* 552 S.W.2d 928, 931 (Tex.Civ.App.—Corpus Christi 1977, no writ); McDonald, Texas Civil Practice, § 11.28.1 (1970).

▆▆ In acting on the motion where fact findings are important, all evidence must be considered in the light most favorable to support the jury's findings, and every reasonable intendment deducible from the evidence is to be indulged in favor of the verdict. *Dodd v. Texas Farm Products Co.,* 576 S.W.2d 812 (Tex.1979); *Douglass v. Panama, Inc.,* 504 S.W.2d 776, 777 (Tex. 1974). Only the evidence and inferences therefrom that support the jury findings should be considered, with all contrary evidence and inferences being rejected. *Dodd v. Texas Farm Products Co.,* 576 S.W.2d 812, 814–15 (Tex.1979); *Martinez v. Delta Brands, Inc.,* 515 S.W.2d 263 (Tex.1974).

The record as it stands before us indicates that the evidence pertaining to the various theories of law relied upon by the respective parties was not fully developed. In addition, some of the appellate points of error and counterpoints of error are very confusing because of the general legal principles stated thereunder, and, although generally correct when considered as abstract principles of law, are misapplied, in some instances, to the facts actually developed. Other legal principles appropriate to these same facts are overlooked by both sides.

▆▆ To establish an easement by prescription, the claimant must show the use of

the alleged servient estate was open, notorious, hostile, adverse, uninterrupted, exclusive and continuous for a period of more than ten years. *Davis v. Carriker*, 536 S.W.2d 246, 250 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.); *Dailey v. Alarid*, 486 S.W.2d 620 (Tex.Civ.App.—Tyler 1972, writ ref'd n. r. e.). See *Bindseil v. Collins*, 481 S.W.2d 221, 224 (Tex.Civ.App.—Austin 1972, no writ); *Bretzke v. Gode*, 289 S.W. 111 (Tex.Civ.App.—Austin 1926, no writ). The hostile and adverse character of the user necessary to establish an easement by prescription is the same as that which is necessary to establish title by adverse possession. *Othen v. Rosier*, 148 Tex. 485, 226 S.W.2d 622, 626 (1950); *City of Houston v. Church*, 554 S.W.2d 242, 245 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n. r. e.); *Johnson v. Faulk*, 470 S.W.2d 144, 146 (Tex.Civ.App.—Tyler 1971, no writ). See Tex.Rev.Civ.Stat.Ann. art. 5515 (1958).

A "claim of right" within the meaning of article 5515 defining adverse possession means that the entry of the claimant must be with intent to claim the land as his own, to hold it for himself and such must be manifested by declaration or by open or visible acts. If there is no verbal assertion of claim to the land brought to the knowledge of the landowner, adverse possession must be so open and notorious and manifested by such open or visible act or acts that knowledge on the part of the landowner will be presumed. *Rocha v. Campos*, 574 S.W.2d 233 (Tex.Civ. App.—Corpus Christi 1978, no writ). No matter what the use and occupancy of the land may be, in order to obtain title by adverse possession, the adverse possessor must intend to appropriate it. If, by mental reservation, the adverse possessor intends to hold the land only until or unless the true owner appears, his claim of right does not satisfy that requirement. *Calfee v. Duke*, 544 S.W.2d 640 (Tex.1976). One general test to determine whether a claim is hostile is whether the use, occupancy, and possession of land by the adverse possessor is of such nature and character as reasonably to notify the true owner that a hostile claim is being asserted to the land. *Arnold*

*v. Jones*, 304 S.W.2d 400 (Tex.Civ.App.—Texarkana 1957, no writ).

Looking at the evidence in the light most favorable to the jury's findings, we are of the opinion that there is some evidence to support the special issues, all of which were submitted without objection and answered by the jury that plaintiffs, or their predecessors in title, acquired the easement by adverse possession. However, we are also of the opinion that such evidence is insufficient to support a judgment on this basis. The cause must be reversed and remanded in the interest of justice to the trial court for a new trial and for the further development of facts applicable to proper legal principals. See *Hicks v. Matthews*, 153 Tex. 177, 266 S.W.2d 846 (1954); *Woods v. Townsend*, 144 Tex. 594, 192 S.W.2d 884 (1946); *Scott v. Liebman*, 404 S.W.2d 288 (Tex.1966).

Although there is some evidence to support the submission of the easement by prescription special issues, as we have said herein, the overwhelming preponderance of the evidence (although not fully developed), indicates that there was an enforceable agreement for an express easement in conjunction with the 1931 and 1941 deeds, or an oral easement enforceable under the principles of estoppel.

In their fourth point of error, plaintiffs complain that the trial court erred in granting the judgment non obstante veredicto because, as a matter of law, they had an express easement in one of two prior recorded deeds. This point of error is grouped for argument and authority purposes with plaintiffs' point of error 5 which complains that the jury's answer to special issue number 3, (the only issue submitted pursuant to plaintiffs' express easement theory), is supported by legally and factually insufficient evidence.

In considering the fourth point of error we would be limited solely to the terms of the 1941 deed in this appeal because that is the only deed upon which plaintiffs relied in their motion for new trial. The contention that the 1931 deed

entitled plaintiffs to an express easement was not otherwise before the trial court. See Rule 324, Texas Rules of Civil Procedure. In response to plaintiffs' arguments, defendant contends the easement purportedly granted by the 1941 deed is void as a matter of law because neither the servient estate nor the location of the easement is fixed under the terms of the deed. See *Williams v. Ellison*, 493 S.W.2d 734 (Tex. 1973); *Morrow v. Shotwell*, 477 S.W.2d 538 (Tex.1972). Although we recognize the general rules upon which defendant relies, we do not agree that the lack of definite terms stated in an express grant of an easement is always fatal.

It is generally stated that the fact that an easement clause is vague, indefinite, or uncertain will not necessarily authorize the court to completely ignore the valuable right thereby granted if the clause is susceptible of a reasonable construction as to the true intent of the parties. See 21 Tex.Jur.2d, Easements § 13, pp. 132–33 (1961). An express easement is generally subject to the statute of frauds: however, parol evidence is admissible under certain circumstances to aid in the description of the land to be charged and the location of the easement itself. Our Supreme Court recently reaffirmed that extrinsic evidence may be utilized to aid a general property description. *Kmiec v. Reagan*, 556 S.W.2d 567, 569 (Tex.1977). The statute of frauds does not always preclude the introduction of parol evidence to establish the location of a right-of-way easement. An express grant of a right-of-way set out in general terms without specifying the exact place for its location can be made certain by the act of the grantee in selecting the easement. Once he has selected the easement location with the consent and/or the acquiescence of the grantor, the grantee's easement rights under the grant then become fixed and certain. See *Houston Pipe Line Company v. Dwyer*, 374 S.W.2d 662, 666 (Tex.1964); see 21 Tex.Jur.2d Easements § 45, pp. 173–74 (1961).

In this case, we cannot sustain plaintiffs' contention that the terms of the 1941 deed in and of itself created an express easement as a matter of law because the parol evidence admitted at trial did not conclusively establish either the servient estate or the location of the easement. The parol evidence tended to show that two of the grantors of the 1941 deed, the defendant and George Elliott, Sr., owned separate tracts of land both of which bordered the southeast corner of the Dollery tract. At one time or another, there may have existed two driveways near the southeast corner of the Dollery tract, one located on the land owned by George Elliott, Sr., and one located on the land owned by defendant. The record does not conclusively establish the location of the driveway easement in relation to these two tracts of land or the dates these respective driveways were constructed or used.

A precise determination of ownership of the three tracts of land surrounding plaintiffs' tract by time sequence has important consequences in terms of the proper legal principles that apply to plaintiffs' express easement theory. Neither the facts nor the legal principles which were relied upon by the parties were fully or accurately developed during the trial or here on appeal. For example, under the theories advanced by both parties, Melissa Rouse owned, as a tenant in common with defendant and Oliver Elliott, a larger tract of land from which defendant's tract was later partitioned. The well-settled general rule is that each owner in a cotenancy acts for himself, and no one is agent for the others or has any authority to bind other cotenants merely because of the cotenancy relationship. *Willson v. Superior Oil Company*, 274 S.W.2d 947 (Tex.Civ.App.—Texarkana 1954, writ ref'd n. r. e.); *Little v. Williams*, 272 S.W.2d 409, 413 (Tex.Civ.App.—Austin 1954, writ ref'd n. r. e.); 15 Tex. Jur.2d, Cotenancy § 8, p. 163 (1960). Absent consent or subsequent ratification by the other cotenants, the general rule is that one cotenant cannot impose an easement upon the common property in favor of third persons. 86 C.J.S. Tenancy in Common § 111 p. 517 (1954). See *Lee v. Phillips*

*Petroleum Co.*, 329 F.Supp. 579 (S.D.Tex. 1971). On the other hand, under certain circumstances, a stranger can receive title from one cotenant of a conveyance purporting to convey the complete common title, together with entry onto the land in question and acquire the property through adverse possession. See 15 Tex.Jur.2d, Cotenancy § 35 (1960). In addition to these general rules, other rules pertaining to cotenancy situations could apply to this case. Neither the pleadings, the evidence, or the arguments contained in the appellate briefs, however, developed the cotenancy relationship and attendant issues of authority, notice, and ratification, and the evidence presented does not resolve these issues as a matter of law.

Remaining to be considered is plaintiffs' theory of easement by estoppel. One who attempts to establish an easement by estoppel must show that 1) a representation was communicated to the promisee; 2) the communication was believed; and 3) there has been reliance upon such communication. *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196 (Tex.1962); *Doss v. Blackstock*, 466 S.W.2d 59 (Tex.Civ.App.—Austin 1971, writ ref'd n. r. e.). The reliance element may include detriment to the promisee which may be determined from the surrounding circumstances, such as the effect on the user if the easement is revoked or removed. *Lake Meredith Dev. Co. v. City of Fritch*, 564 S.W.2d 427, 429 (Tex.Civ.App.—Amarillo 1978, no writ).

We have considered all of the record relative to the estoppel theory and agree that there is some evidence to support the jury's answers to these estoppel special issues. However, we are of the opinion that the evidence is not sufficient to support a judgment, and it also requires further development.

For the reasons stated herein, the judgment is reversed and the cause remanded to the trial court in the interests of justice for a new trial.