Jack **LAGOS**, Appellant

v.

**PLANO ECONOMIC DEVELOPMENT BOARD, INC. and Sally Bane, Appellees.**

No. 05–10–01103–CV.

Court of Appeals of Texas, Dallas.

Aug. 30, 2012.

Raul Hector Loya, Loya & Associates, P.C., Dallas, TX, for Appellant.

David L. Ovard, Jadd F. Masso, Rachel R. Dedman, Strasburger & Price, LLP, Dallas, TX, for Appellees.

Before Chief Justice WRIGHT and Justices BRIDGES and LANG.

## OPINION

Opinion By Justice BRIDGES.

Appellant Jack Lagos appeals from the trial court's order granting a permanent injunction on summary judgment in favor of appellees Plano Economic Development Board, Inc. and Sally Bane. In his third amended brief, Lagos contends: (1) appellees did not meet their initial summary judgment burden as to restraining him, other than to approach the appellees' office space and (2) Lagos defeated appellees' summary judgment as to restraining him on issues other than approaching appellees' office space. We reverse and render judgment in favor of Lagos.

### Background

The Plano Economic Development Board, Inc. (the "Corporation") contracts with the City of Plano to "recruit businesses to Plano so as to broaden and diversify its tax base and create quality em-

ployment opportunities." Sally Bane is the Executive Director of the Corporation, and Linda Thomason is the Corporation's administrative assistant.

Lagos is a resident of Plano. For many years, he has requested review of the Corporation's documents in order to "expose the Board to ridicule and to defeat it politically." Lagos has stated that one of his basic rights is the right to petition the government for redress of grievances. "This right to watch, lobby, and agitate was considered so precious to our liberties that it was enshrined as the very first in the Bill of Rights to the United States Constitution." Lagos states his disagreements with the Corporation "over spending and the public's right to know and his confrontations with the City of Plano have resulted in several written opinions by the Texas Attorney General that have forced [the Corporation] to publish its agendas and to open its meetings and records to the public."

On August 20, 2009, Lagos arrived at the Corporation's offices to review certain documents he had requested. Thomason provided him with the documents; however, he was dissatisfied with the completeness of the Corporation's documents and requested an additional document. Specifically, Lagos reviewed the Corporation's agendas and minutes from 1991 when he found an attachment missing from the July 1991 minutes. Thomason told Lagos she would advise Bane of his request.

When informed that he would need to complete an Open Records Request for the additional document, Lagos raised his voice with Thomason and Bane and became confrontational. He indicated he did not understand why he could not see the document and that he felt the Corpora-

tion's personnel were trying to hide something from him.

While still at the office, Lagos called Mayor Phil Dyer's office. According to Corporation employees who were present during the phone call, Lagos stated there was a grenade about to go off in the Corporation's board room and that the Mayor and the Corporation's staff would not like his surprises. Lagos, on the other hand, states that he "informed [Mayor Dyer] that [he] had income tax returns, that if revealed to the Board, it would be like a grenade going off in the Board room." He claims the grenade comment was merely a figure of speech. At the time, Mayor Dyer indicated he did not "feel they were threatening in any manner." [1]

According to the affidavits of Bane and Thomason, after he made the call to Mayor Dyer, Lagos "said he would make appointments to come back and review the other notebooks containing minutes." Following Lagos's departure from the Corporation's office, Bane consulted with the Corporation's attorneys, the city human resources department, and the city manager's office. After those calls were made, employees of the Corporation called the Plano Police Department and provided statements regarding Lagos's behavior and grenade comment. Bane and Thomason testified, through affidavit, that Lagos's behavior caused the Corporation's staff to fear for their safety.

On August 27, 2009, appellees filed suit against Lagos, seeking to enjoin Lagos from coming within 500 feet of the Corporation's office and its personnel. The trial court issued a temporary injunction, and appellees later moved for summary judg-

---

1. An article from the "Plano Courier Star," dated October 23, 2009, includes a statement from the Corporation's attorney that Mayor Dyer "did not realize the severity of the comment until later."

ment. The trial court granted summary judgment in favor of appellees, giving appellees a permanent injunction against Lagos. Specifically, the injunction restrains Lagos from: (1) coming within 500 feet of the Corporation's office located on Granite Parkway; (2) coming within 500 feet of any future office of the Corporation; (3) coming within 500 feet of, making telephone calls to, or sending emails to Bane, Davis Ellis, Thomason, Lyn Innes, Elaine Hamm, Myron Albert, Jim Boswell, Gregory P. Fuller, Larry May, and Thomas J. Quirk; (4) coming within 500 feet of Mayor Dyer, except at public events where Dyer functions in the official capacity as the Mayor of the City of Plano; and (5) coming within 500 feet of Thomas H. Muehlenbeck, except at public events where he functions in the official capacity as the City Manager of the City of Plano.[2]

On appeal, Lagos contests the restrictions placed on him by paragraphs 3, 4, and 5 of the injunction (restraining him with regard to the individuals), but not paragraphs 1 and 2 (restraining him with regard to the Corporation).

### Analysis

In two issues, Lagos contends appellees failed to meet their burden in order to obtain summary judgment and that he defeated appellees' summary judgment. Specifically, Lagos challenges the trial court's grant of paragraphs 3, 4, and 5 of the permanent injunction. We discuss Lagos's two issues together.

 We review the grant of a permanent injunction for abuse of discretion. *Glattly v. Air Starter Components, Inc.,* 332 S.W.3d 620, 642 (Tex.App.-Houston [1st Dist.] 2010, pet. denied). The stan-

dard of review becomes somewhat more complex when, as here, the request for injunctive relief is granted pursuant to a grant of summary judgment. *Tex. Health Care v. Seton Health Plan, Inc.,* 94 S.W.3d 841, 851 (Tex.App.-Austin 2002, pet. denied). With the standards of review for injunctive relief and for summary judgment in mind, we must consider all the summary judgment evidence to determine whether the trial court clearly abused its discretion by granting the permanent injunction. *Id.*

 To obtain injunctive relief, a party must generally show: (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law. *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n,* 25 S.W.3d 845, 849 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). The purpose of injunctive relief is not to grant relief for past actionable wrongs or to prevent commission of wrongs not imminently threatened. *Tex. Employment Comm'n v. Martinez,* 545 S.W.2d 876, 877 (Tex.Civ. App.-El Paso 1976, no writ).

 An injunction must also be specific in its terms and describe in reasonable detail the acts sought to be restrained. *See Computek Computer & Office Supplies, Inc. v. Walton,* 156 S.W.3d 217, 221 (Tex.App.-Dallas 2005, no pet.); Tex.R. Civ. P. 683. An injunction should be broad enough to prevent a repetition of the "evil" sought to be corrected, but not so broad as to enjoin a defendant from lawful activities. *Webb v. Glenbrook Owners Ass'n, Inc.,* 298 S.W.3d 374, 384 (Tex.App.-Dallas 2009,

---

**2.** Ellis, Innes, and Hamm are employees of the Corporation. The members of the Corporation's board of trustees are Albert, Boswell, Fuller, May, and Quirk, along with Phil Dyer

(Mayor of the City of Plano) and Thomas H. Muehlenbeck (City Manager of the City of Plano).

no pet.). *See also Brammer v. KB Home Lone Star, L.P.,* 114 S.W.3d 101, 111 (Tex.App.-Austin 2003, no pet.); *Chandler v. Chandler,* 991 S.W.2d 367, 404 (Tex.App.-El Paso 1999, pet. denied) (The appropriate constitutional standard is that an injunction must burden no more speech than necessary to serve a significant government interest.). The record must also reflect the need for the injunction at each location where conduct is enjoined, and the evidence must support both the kind of relief granted and the specific restrictions at each location. *See Brammer,* 114 S.W.3d at 111. An injunction that enjoins lawful as well as unlawful acts may constitute an abuse of discretion. *Id.*

■ With regard to paragraphs 3, 4, and 5 [3] (enjoining Lagos from coming within 500 feet of, calling, or emailing the individuals), Lagos argues appellees failed to show that he "posed an immediate threat of irreparable harm." See *Jim Rutherford,* 25 S.W.3d at 849. Of the twelve individuals from which Lagos is enjoined, appellees only attached evidence from two of the individuals to their motion for summary judgment. Through their affidavits, both Bane and Thomason testify they are concerned for the "safety of the Corporation's staff" based on Lagos's "pat-

tern of abusive behavior, harassment, outbursts and his threat at the Corporation's office on August 20, 2009, as well as his past history." [4] However, these affidavits provide no evidence that Lagos ever approached them, called them, or emailed them outside of the Corporation's office. The record also contains no evidence Lagos approached, called, or emailed the other individuals listed in paragraph 3, outside the Corporation's office. There is no evidence in the record that Lagos approached Mayor Dyer or Muehlenbeck, beyond when they were functioning in their official capacities.

Furthermore, Lagos explained that he used the term "grenade" as a figure of speech, and Thomason admitted she knew Lagos "had not been in the Board room during his visit" to plant a grenade. [5] Both Bane and Thomason testified that, following the grenade comment, Lagos said he would make appointments to return to the Corporation's office to review minutes. Finally, uncontested paragraphs of Lagos's affidavit state as follows:

10. In the time that I went to the Plano Economic Development Board's offices, my contact and conversations with the Board and people associated with the Board was about public records and Board business only.... All of my

---

3. We note that, during the course of oral argument, counsel for appellees stated that the Plano Economic Development Board, Inc. was no longer operational and was in the process of "winding up." Counsel further conceded that paragraphs 1 and 2 of the injunction are now be moot. However, because Lagos does not appeal paragraphs 1 and 2 of the permanent injunction, we do not address them in this opinion.

4. Both Bane and Thomason testified, "Prior to August 20, 2009, Mr. Lagos's behavior had begun to deteriorate during his visits to the Corporation's office to review documents and his behavior had become improper, abusive and disruptive to the point that when he is in

the Corporation's office, the Corporation's staff cannot perform [their/our] job duties and responsibilities." The record also includes a separate affidavit of Sally Bane, describing a June 19, 2008 incident at the Corporation's office in which she heard a loud bang. She explained she stepped into the lobby and observed Lagos "standing by the door holding the detached door knob in his hand. [She] then observed Mr. Lagos throw the door knob into a chair and abruptly leave the office."

5. Although Thomason said she knew Lagos had not been in the Board room, she testified "his statement felt threatening."

contact with Petitioners and people associated with the Board, other than the mayor and city manager, who have City of Plano offices, was in the Board office. I never contacted these people outside of their offices or at their homes.

11. I have never gone to the homes of Board members or people associated with the Board. I never followed these people to their cars and I never waited by their cars. I did not follow these people in any respect. I have never made phone calls to the home phone numbers of the Board members or Board employees or people associated with the Board.

We, therefore, conclude appellees failed to provide evidence that Lagos posed an imminent harm or irreparable injury to the individuals covered by paragraphs 3, 4, and 5. *See Jim Rutherford*, 25 S.W.3d at 849; *Martinez*, 545 S.W.2d at 877.

Lagos also contends the injunction, "by virtue of its regulation of [Lagos] relative to members and staff of the corporation (including when they attend public city council meetings and work sessions) bars [Lagos] from attending those meetings and functions and is too broad." We agree.

Paragraphs 4 and 5 of the injunction permit Lagos to attend functions in which the mayor and city manager are acting in their official capacities. However, if the individuals listed in paragraph 3 are also in attendance, the language of the permanent injunction forbids him from attending those meetings or functions. We conclude the injunction enjoins activities Lagos otherwise has a legal right to perform, such as attending public city council meetings and work sessions, and thus the injunction is overbroad. *See Webb*, 298 S.W.3d at 384; *Computek*, 156 S.W.3d at 223; *Brammer*, 114 S.W.3d at 111.

Because appellees failed to provide evidence that Lagos posed imminent harm or irreparable injury to the individuals and because the language of the permanent injunction is overbroad, we conclude the trial court abused its discretion by entering paragraphs 3, 4, and 5 of the permanent injunction. *See Webb*, 298 S.W.3d at 384. We, therefore, resolve Lagos's two issues in his favor and reverse and render judgment dissolving the injunction paragraphs as numbered 3, 4, and 5. *See id.* at 392.