

# NUMBER 13-14-00211-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**RUDIS ROBLES AND**
**CLAUDIA FLORES ROBLES,**                                    **Appellants,**

**v.**

**CHRISTOPHER MANN,**
**GWENDA MANN, AND**
**MANN'S MACHINE, INC.,**                                    **Appellees.**

---

### On appeal from the 284th District Court
### of Montgomery County, Texas.

---

## MEMORANDUM OPINION

### Before Justices Garza, Perkes, and Longoria
### Memorandum Opinion by Justice Perkes[1]

---

[1] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, the appeal has been transferred to this Court from the Ninth Court of Appeals in Beaumont, Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2015 R.S.).

Christopher and Gwenda Mann (Mann) brought suit against Rudis and Claudia Robles (Robles) seeking a declaratory judgment and injunctive relief with respect to an access easement. Mann and Mann's Machine, Inc. brought various causes of action for damages with respect to Robles's interference with the use of the easement.[2] After a bench trial, the trial court found in favor of Mann on the declaratory judgment, granted a permanent injunction, and awarded Mann attorney's fees. The trial court, however, entered a take nothing judgment in favor of Robles on Mann and Mann's Machine, Inc.'s damage claims. All of the parties have appealed. We reverse and remand in part and affirm in part.

## I.    BACKGROUND

Robles and Mann own adjoining tracts of land deriving from a common source. The land was originally owned by Ciendy Lawson who conveyed 25.771 acres of the property to John Pettit (Lawson Deed) and granted an express ingress and egress easement across her remaining 45-acre tract. Mann subsequently purchased Pettit's land. The conveyance from Pettit to Mann (Pettit Deed) also included a grant of an express ingress and egress easement across the 45-acre tract. After purchasing the land from Pettit, Mann moved the business, Mann's Machine, Inc., onto the property. Sometime thereafter, Robles purchased the 45-acre tract adjacent to Mann's property from Lawson. Mann's easement is located on Robles's (formerly Lawson's) property and

---

[2] Mann and Mann's Machine, Inc. brought causes of action for trespass to try title, intentional interference with property rights, conversion, fraud, negligent misrepresentation, negligence, private nuisance, injury to real property, business torts, exemplary damages, and vicarious liability. Mann did not prevail on any of these causes in the trial court. On appeal, they seem to be limiting their argument to their interference claim.

2

connects Mann's property to the county road. After purchasing the property, Robles installed a gate across the cattle guard at the beginning of the easement, ostensibly to keep his cattle off the county road.

Mann filed suit against Robles seeking a declaratory judgment and arguing, among other things, that Robles's gate prevented access to his property. The trial court found in favor of Mann on his declaratory judgment claim and declared that "Christopher and Gwenda Mann are the owners of and have a 60 foot wide easement for the purpose of ingress/egress as described in the [Pettit deed]." The trial court ordered Robles to remove the gate installed across the cattle guard and permanently enjoined Robles from interfering with or obstructing Mann's easement. The trial court further ordered that Mann and Mann's Machine, Inc. take nothing on their damage claims, but awarded Mann $4,069.98 in attorney's fees.

All parties appealed the trial court's judgment. Robles brings four issues challenging the existence and conveyance of the easement, and challenging the order for a permanent injunction. Mann and Mann's Machine, Inc. bring two cross-appeal issues asserting entitlement to money damages and a higher award of attorney's fees.

No findings of fact and conclusions of law are included in the appellate record. Since there are no findings of fact or conclusions of law, the trial court's judgment implies all findings of fact necessary to support it. *See Pharo v. Chambers County*, 922 S.W.2d 945, 948 (Tex. 1996).

3

## II.    ROBLES'S ISSUES

## A.    Easement Creation

By his first issue, Robles argues the trial court erred as a matter of law in finding an easement in the Lawson deed since the easement could not be located on the ground. By his second issue, Robles argues the trial court erred as a matter of law because the Pettit deed created an easement that did not exist in the Lawson deed.

### 1.    Standard of Review

We apply basic principles of contract construction and interpretation when considering an express easement's terms. *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 701 (Tex. 2002). In the case of an unambiguous writing, courts will give effect to the intention of the parties as expressed by or as apparent from the writing. *Adams v. Norsworthy Ranch, Ltd.*, 975 S.W.2d 424, 428 (Tex. App.—Austin 1998, no writ). The proper construction of an unambiguous agreement is a question of law for the court. *Phillips Nat. Gas Co. v. Cardiff*, 823 S.W.2d 314, 317 (Tex. App.—Houston [1st Dist.] 1991, writ denied). When an issue turns on a pure question of law, we apply a de novo standard of review. *Marsh v. Frost Nat'l Bank*, 129 S.W.3d 174, 177 (Tex. App.—Corpus Christi 2004, pet. denied). We are not obligated to give any deference to legal conclusions reached by the trial court. *Id.*

### 2.    Applicable Law

An easement created by an express grant must be described with such certainty that a surveyor could go upon the land and locate the easement from the description. *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983). The grant must furnish, within itself or

4

by reference to other identified writings then in existence, means or data by which the servient estate may be identified with certainty. *Compton v. Tex. S.E. Gas Co.*, 315 S.W.2d 345, 348 (Tex. Civ. App.—Houston 1958, writ ref'd. n.r.e.). If the description is inadequate or if there is no description, there can be no easement. *Vrabel v. Donohoe Creek Watershed Auth.*, 545 S.W.2d 53, 54 (Tex. Civ. App.—Austin 1976, no writ).

However, certain un-located easements will be valid, such as where the instrument merely permits the construction of some facility or the laying of a line on designated property. *See Armstrong v. Skelly Oil Co.*, 81 S.W.2d 735, 736 (Tex. Civ. App.—Amarillo 1935, writ ref.). An express grant of a right-of-way set out in general terms without specifying the exact place for its location can be made certain by the act of the grantee in selecting the easement. *Elliott v. Elliott*, 597 S.W.2d 795, 802 (Tex. Civ. App.—Corpus Christi 1980, no writ). Once selected, the grantee's easement rights become fixed and certain. *Id.* (citing *Houston Pipe Line Co. v. Dwyer*, 374 S.W.2d 662, 666 (Tex. 1964)).

### 3. Analysis

In his first issue, Robles argues "the trial court erred as a matter of law in finding an easement in the Lawson Deed for the reason that the easement could not be located on the ground." Robles contends that since the Lawson deed did not contain a metes and bounds description of the easement, the exact location of the easement cannot be determined. According to Robles, without an exact location, the easement fails. In support of his argument, Robles cites *Vrabel v. Donahome Creek Watershed Authority*. In *Vrabel*, the easement description was as follows:

> Being 111.0 acres, more or less, out of a 250.5 acre tract of land in the Basil Durbin Survey, as more fully described in a Warranty Deed dated January

5

1, 1953, from Erwin Mankins and wife, Mayna Allene Mankins, to Leslie E. Moore and wife, Lela Mae Moore as recorded in Volume 385, Page 599, of the Deed Records of Williamson County, Texas, to which reference is made for all purposes.

545 S.W.2d at 54. Our sister court held that the easement failed because it lacked a description and references to any locating monuments. *See id.*

*Vrabel*, however, is clearly distinguishable. In the instant case, the Lawson deed provides, in relevant part:

Also included in the conveyance is a *60' wide easement* beginning at the cattle guard on the *South side of Lawson 45+ acre tract* and *proceeding in as nearly a straight line* as practicable *to the entrance of the 25.771 acre tract*, GRANTOR stipulates that no other additional rights-of-way shall encroach upon or be common to this right-of-way without express written consent of GRANTEE.

(Emphasis added.) Unlike the deed in *Vrabel*, the Lawson deed adequately describes where the easement begins—the cattle guard on the south side of Lawson's 45 acre tract—and where the easement ends—the entrance of the 25.771 acre tract—as well as its width and general direction. The Lawson deed also adequately describes the land encumbered by the easement—the Lawson 45-acre tract. *See Jones v. Fuller*, 856 S.W.2d 597, 603 (Tex. App.—Waco 1993, writ denied) (concluding the failure to describe the exact location of the easement does not affect the validity of the easement where encumbered land is adequately described). Therefore, we hold that the trial court did not err as a matter of law in deciding that the Lawson deed created by an express grant an ingress/egress easement across the 45-acre tract now owned by Robles. Robles's first issue is overruled.

6

In his second issue, Robles argues "the trial court erred as a matter of law for the reason that the Pettit deed created an easement that did not exist in the Lawson deed." Specifically, Robles argues the Pettit deed created an easement of ingress and egress which was not in the Lawson deed and points to differences between the two deeds: (1) the Pettit deed creates an easement of ingress and egress different from the Lawson deed; (2) the Pettit deed contains metes and bounds for the easement; (3) the Pettit deed creates a different beginning and end point than the Lawson deed; (4) the Pettit deed uses a different description for the cattle guard location; (5) the Pettit deed describes a gate at the end of the easement on the 25.771 acre tract; and (6) the Pettit deed's description of the easement's width is more specific than that of the Lawson deed.

Robles's arguments are without merit. First, the Lawson deed specifically created a right-of-way easement by stating ". . . no other additional rights-of-way shall encroach upon or be common to this right-of-way." While the Pettit deed describes the easement as being for "ingress and egress," both deeds grant the same right of passage. *See Greenwood v. Lee*, 420 S.W.3d 106, 116–117 (Tex. App.—Amarillo 2012, pet. denied) ("easement" in conjunction with "right-of-way" is understood to mean a right to pass over the described land).

Second, as previously discussed, the undefined boundaries of an easement granted for a specific purpose can become fixed by the use of land for the prescribed purpose with the consent or acquiescence of the property owner. *See Dwyer*, 374 S.W.2d at 666; *Vinson v. Brown*, 80 S.W.3d 221, 227 (Tex. App.—Austin 2002, no pet.); *Adams*, 975 S.W.2d at 428. In *Dwyer*, the Texas Supreme Court reviewed a pipeline

7

easement that did not describe its dimensions by metes and bounds or even give a course or direction for the pipe. *Dwyer*, 374 S.W.2d at 663. The Supreme Court held that the pipeline company's right to the easement nevertheless became fixed and certain when the company constructed the pipeline with the consent and acquiescence of the landowner. *Id.* at 666. Courts have found similar fixation of the boundaries of an easement based on the use of the land for the purpose specified by the easement. *See Vinson*, 80 S.W.3d at 227–28; *Adams*, 975 S.W.2d at 428; *Elliott*, 597 S.W.2d at 802. Consequently, Robles's arguments highlighting the variances between the Lawson and Pettit deed fail. It is undisputed Mann uses the easement for access to his property and Mann's use of the easement predates Robles's purchase of his land. Pettit was the grantee from Lawson, and his subsequent grant to Mann coupled with Mann's use of the access road fixed the easement's location. *See Dwyer*, 374 S.W.2d at 666; *Vinson*, 80 S.W.3d at 227–28. Therefore, we disagree with Robles's assertions that the Lawson and Pettit deeds create different easements. Accordingly, we overrule Robles's second issue.

## B.  Easement Conveyance

By his third issue, Robles argues the trial court "erred as a matter of law in entering judgment against Robles conveying to Mann an easement for the reason that there can be no conveyance of an easement." Robles complains that the trial court's judgment language declaring that "Christopher Mann and Gwenda Mann *are the owners* of and have a 60 wide easement . . . ." (emphasis added) improperly conveys a property interest. Robles asks this Court to reform the judgment by striking the language "are the owners."

8

### 1. Standard of Review

Robles's third issue is a purely legal question. When an issue turns on a pure question of law, we apply a de novo standard of review. *Marsh*, 129 S.W.3d at 177.

### 2. Applicable Law

An easement is a nonpossessory interest in land. *State v. Brownlow*, 319 S.W.3d 649, 652 (Tex. 2010). Although no interest in property or other right passes by implication as incidental to the grant of an express easement, the grantee is permitted to do what is reasonably necessary for the fair enjoyment of the easement itself. *Wall v. Lower Colo. River Auth.*, 536 S.W.2d 688, 691 (Tex. Civ. App.—Austin 1976, writ ref. n.r.e.).

### 3. Analysis

Numerous Texas courts have described easement holders as "owners." *See Harris County Flood Control Dist., v. Shell Pipe Line Corp.,* 591 S.W.2d 798, 800 (Tex. 1979); *Sun Pipe Line Co., v. Kirkpatrick*, 514 S.W.2d 789, 792 (Tex. Civ. App.—Beaumont 1974, writ ref. n.r.e.); *San Jacinto Sand Co., v. S.W. Bell Tel. Co.*, 426 S.W.2d 338, 343 (Tex. Civ. App.—Houston [14th Dist.] 1968, writ ref. n.r.e.); *Baer v. Dallas Theater Ctr.*, 330, S.W.2d 214, 219 (Tex. Civ. App.—Waco 1959, writ ref. n.r.e.). We conclude the trial court correctly referred to Christopher and Gwenda Mann as "owners" of the easement.

More importantly, the trial court's judgment did not grant Mann the right to use the easement for any purpose greater than the express grant. *See Marcus Cable Assocs., L.P.,* 90 S.W.3d at 700. The trial court declared that Mann "owns" a 60 foot wide

9

easement, as described in the Pettit deed, for the purpose of ingress and egress. The trial court's judgment is consistent with the express grant. Rather than expanding Mann's rights, the trial court's order provides for what the express grant allowed. *See Johnson v. S.W. Pub. Serv. Co.*, 688 S.W.2d 653, 655 (Tex. App.—Amarillo 1985, no writ). Robles's third issue is overruled.

## C.    Permanent Injunction

By his fourth issue, Robles argues "the trial court erred in ordering the Robleses to remove the gate and permanently [enjoining] the Robleses from the use of their property." Robles's issue concerns the scope of the easement, specifically, whether or not Robles is permitted to use a locking gate across the easement. Robles further challenges the trial court's permanent injunction ordering the removal of his cattle from the easement, which he claims defeats his right to use and enjoy his property.

### 1.    Standard of Review

We review the grant of a permanent injunction for abuse of discretion. *Lagos v. Plano Econ. Dev. Bd., Inc.*, 378 S.W.3d 647, 650 (Tex. App.—Dallas 2012, no pet.). To determine if there is an abuse of discretion, we look to see if the trial court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). To obtain injunctive relief, a party must generally show: (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law. *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 849 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). The purpose of injunctive relief is not to grant

10

relief for past actionable wrongs or to prevent commission of wrongs not imminently threatened. *Tex. Emp't Comm'n v. Martinez*, 545 S.W.2d 876, 877 (Tex. Civ. App.—El Paso 1976, no writ). An injunction should be broad enough to prevent a repetition of the "evil" sought to be corrected, but not so broad as to enjoin a defendant from lawful activities. *Lagos*, 378 S.W.3d at 650. An injunction that enjoins lawful as well as unlawful acts may constitute an abuse of discretion. *Id.* at 651. As we stated earlier in this opinion and to the extent necessary to resolve this issue, we review the interpretation of deeds granting easements de novo. *Marsh,* 129 S.W.3d at 177.

### 2.     Applicable Law

A servient estate cannot interfere with the right of the dominant estate to use an easement for the purpose for which it was granted or sought. *McDaniel v. Calvert*, 875 S.W.2d 482, 485 (Tex. App.—Fort Worth 1994, no writ) (citing *Bickler v. Bickler*, 403 S.W.2d 354, 359 (Tex. 1966)). Likewise, the easement owner must make reasonable use of the right and not unreasonably interfere with property rights of the owner of the servient estate. *San Jacinto Sand Co. v. Sw. Bell Tel. Co.*, 426 S.W.2d 338, 345 (Tex. Civ. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). Any use by others that interferes with the exercise of superior easement rights must yield. *Taylor Foundry Co. v. Wichita Falls Grain Co.*, 51 S.W.3d 766, 770 (Tex. App.—Fort Worth 2001, no pet.); *McDaniel*, 875 S.W.2d at 485 (citing *Pittman v. City of Amarillo*, 598 S.W.2d 941, 944 (Tex. App.—Amarillo 1980, writ ref'd n.r.e.)). Whether a party has the right to erect gates depends upon the intent of the parties. *McDaniel,* 875 S.W.2d at 485. The parties' intent can be determined by considering the terms of the grant, its purpose, the nature and situation of

11

the property, and the manner in which it is used. *Id.* (citing *Gerstner v. Wilhelm*, 584 S.W.2d 955, 958 (Tex. Civ. App.—Austin 1979, writ dism'd)).

### 3. Analysis

### a. Installation of Gate

Robles's first argument focuses on whether his placing the gate across the easement was a wrongful act. The Lawson and Pettit deeds do not address the matter of gates. When an express easement is stated in general terms, the easement "implies a grant of unlimited reasonable use such as is reasonably necessary and convenient and as little burdensome as possible to the servient owner." *Reaves v. Lindsay*, 326 S.W.3d 276, 282 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (quoting *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974)). We engage in this balancing test, guided by: "the terms of the grant, its purpose, the nature and situation of the property, and the manner in which it is used" unless the easement's language provides direction otherwise. *Gerstner,* 584 S.W.2d at 958.

Robles asserts that the gate is necessary to keep his cattle off the county road. Robles further argues that because Mann changed the use of his property after Robles installed the gate, Mann cannot now require removal of the gate. *See Greenwood v. Lee*, 420 S.W.3d 106, 120 (Tex. App.—Amarillo 2012, pet. denied) (a change of use of the land, among other factors, showed access over an easement without gates was not reasonably necessary or convenient and the least burden on the servient estate); *but see McDaniel*, 875 S.W.2d 483–85 (trial court did not err in ordering removal of gates where, among other factors, gates had not existed for decades on easement in question).

12

In considering the nature and situation of the property, we note that the record reflects that when the easement was granted, no gates, fences, or other obstacles were placed across the roadway. The easement was openly used for ingress and egress until Robles installed the gate. While we are mindful of Robles's concern about stray cattle, we note that the prior owners of the property shared similar concerns, hence the installation of the cattle guard. Where, as here, an easement is granted to provide abutting landowners access to a roadway, and no gates existed prior to the grant of the easement, "it is evident access to the roadway was to be unobstructed." *McDaniel,* 875 S.W.2d at 485 (without deed language regarding gates, dominant estate had free and unrestricted access); *see Gerstner*, 584 S.W.2d at 958 (trial court did not abuse its discretion in requiring servient estate to remove gates from easement providing access to otherwise landlocked property); *see also Hilburn v. Providian Holdings, Inc.*, No. 01–06–00961–CV, 2008 WL 4836840, at *4 (Tex. App.—Houston [1st Dist.] Nov. 6, 2008, no pet.) (mem. op.) (servient estate had no right to close or lock gate which existed prior to creation of nonexclusive access easement because closed or locked gate interfered with purpose of easement).

### b. Livestock

Robles's second argument asserts that the trial court erred by enjoining him from having his livestock cross the easement, thereby preventing his right to the use and enjoyment of his property. Robles did not preserve this argument for appeal.

To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the

13

desired ruling, if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a). "To preserve a point of error in a judgment, a party must inform the trial court of its objection by a motion to amend or correct the judgment, a motion for new trial, or some other similar method." *Homes v. Humphrey*, 244 S.W.3d 570, 582 (Tex. App.—Beaumont 2008, pet. denied); *Dal–Chrome Co. v. Brenntag Sw.*, Inc., 183 S.W.3d 133, 144 (Tex. App.—Dallas 2006, no pet.); *see also Holland v. Hayden*, 901 S.W.2d 763, 765 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (motion for new trial is appropriate method for preserving error regarding alleged defect in final judgment). Judgment error regarding questions of law must be raised in the trial court. *Solomon v. Steitler*, 312 S.W.3d 46, 61 (Tex. App.—Texarkana 2010, no pet.).

Robles did not make any objection to the injunction's provision requiring the removal of cattle from the easement. Rather, Robles filed a post-judgement "Objection to Plaintiff's Proposed Judgment and Defendant's Motion to Enter His Proposed Judgment" that included Robles's proposed judgment as an attachment. Robles's proposed judgment includes the very language that he now complains about on appeal. As our sister court held in *Morse v. Delgado*,

> Generally after verdict a party can obtain judgment by filing a motion for judgment or by tendering a proposed judgment to the court. *See* TEX. R. CIV. P. 301, 305. If a party files a motion for judgment on the verdict and does not indicate in some manner that it disagrees with the substance of the verdict, then that party cannot challenge on appeal the judgment it requested. *First Nat'l Bank v. Fojtik*, 775 S.W.2d 632, 633 (Tex. 1989); *Litton Indus. Prod., Inc. v. Gammage*, 668 S.W.2d 319, 321–22 (Tex. 1984). This rule is nothing more than a species of the invited error doctrine which prohibits a party from complaining on appeal about an error which he invited. *See Texas Indus., Inc. v. Vaughan*, 919 S.W.2d 798, 804 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

14

975 S.W.2d 378, 381 (Tex. App.—Waco 1998, no writ); *see also In re Dept. of Fam. & Protective Servs.*, 273 S.W.3d 637, 646 (Tex. 2009) (invited error doctrine applies in situations where party requests court to make a specific ruling, then complains of that ruling on appeal); *In re Marriage of Palacios*, 358 S.W.3d 662, 664 (Tex. App.—Amarillo 2009, pet. denied) (concept of invited error prevents litigant from complaining about mistakes that he helped cause). Accordingly, Robles's second argument is waived. *See* TEX. R. APP. P. 33.1(a).

Considering the nature and situation of Robles's and Mann's properties when the easement was granted and the manner in which it was used, access to the roadway was to remain unobstructed. We conclude the trial court did not abuse its discretion in granting the permanent injunction. *See McDaniel*, 875 S.W.2d at 485. Robles's fourth issue is overruled.

### III. MANN'S CROSS-APPEAL ISSUES

### A. Liability and Damages

By his first cross-appeal issue, Mann asserts the trial court's finding of no damages for Mann is against the great weight and preponderance of the evidence.[3] Mann alleges that he proved "intentional interference with property rights and damages resulting from that interference."

---

[3] Mann does not explain whether the evidence was legally insufficient, factually insufficient, or both to support a finding of liability for intentional interference with property rights. We will apply a factual sufficiency standard on the question of liability.

15

### 1.  Standard of Review

When a party attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex. 1983). The reviewing court must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986).

### 2.  Applicable Law

Texas law is well settled that "[a]ny intentional invasion of, or interference with, property, property rights, personal rights or personal liberties causing injury without just cause or excuse is an actionable tort." *Suprise v. DeKock*, 84 S.W.3d 378, 380 (Tex. App.—Corpus Christi 2002, no pet.) (quoting *King v. Acker*, 725 S.W.2d 750, 754 (Tex. App.—Houston [1st Dist.] 1987, no writ)). Under this general rule, Texas courts have recognized a cause of action for tortious interference with the peaceful use and enjoyment of property rights, which is, "in essence, a claim for intentional invasion of, or interference with, property rights." *See id.* at 382; *see also Marrs & Smith P'ship v. D.K. Boyd Oil & Gas Co.*, 223 S.W.3d 1, 21 (Tex. App.—El Paso 2005, pet. denied). The elements of tortious interference with property rights are: (1) an interference with one's property or property rights occurred; (2) such interference was intentional and caused damage; and (3) the interference was conducted with neither just cause nor legal excuse. *See Cleveland Reg. Med. Ctr., L.P. v. Celtic Props., L.C.*, 323 S.W.3d 322, 349 (Tex. App.—

16

Beaumont 2010, pet. denied); *Suprise,* 84 S.W.3d at 380; *see also Edberg v. Laurel Canyon Ranch Architectural Review Comm.*, No. 04–10–00395–CV, 2011 WL 541134, at \*5 (Tex. App.—San Antonio Feb. 16, 2011, pet. denied) (mem. op.).

### 3. Analysis

Mann argues that Robles intentionally interfered with his property rights by placing a gate across the easement and by placing "utility poles, trees, pipes, all kinds of debris" on the easement, which blocked the easement's use by large trucks. He points to Rudis Robles's testimony, wherein he admitted that he intentionally placed the gate and utility poles on the easement.

Regarding the gate, Robles testified he installed the gate in 2005. He stated that the gate was "latched" closed, but that both he and Mann had keys to the gate.[4] Since 2011, he complied with a temporary injunction which required him to keep the gate closed, but not locked. Contrary to Mann's testimony, Robles denied that the utility poles and other debris blocked access to the easement. Robles testified that he placed the poles along the easement to prevent encroachment onto his land. He also testified that 18-wheeler trucks use the easement accessing Mann's property without issue.

Based on Robles's testimony, the trial court could have found that the closed but unlocked gate did not interfere with Mann's use of the easement. Moreover, there was no testimony that Mann was unable to access his property because of the latched gate. *See Carleton v. Dierks*, 195 S.W.2d 834, 837 (Tex. Civ. App.—Austin 1946, no writ) (erecting locked gates interfered with the dominant estate holder's lawful use of the

---

[4] Larry Carter, who works with Robles, clarified that the gate was secured with a sliding latch held in place with a pin.

easement). The trial court could have disagreed with Mann on the alleged interference caused by the utility poles, instead finding that Robles did not block the easement.

It is the trier of fact who judges the credibility of the witnesses and the weight given to their testimony, and it may resolve inconsistencies in the testimony, accepting or rejecting such portions as it sees fit. *Wal-Mart Stores, Inc. v. Scholl*, 990 S.W.2d 412, 419 (Tex. App.—Corpus Christi 1999, pet. denied). We may not substitute our opinion for that of the fact finder merely because another result is possible. *Kirby v. Chapman*, 917 S.W.2d 902, 914 (Tex. App.—Fort Worth 1996, no writ); *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Mann asks us to reweigh the evidence and assess the credibility of Robles's testimony. This we cannot do.

Having reviewed the entire record, we do not find the trial court's implicit finding—that Mann failed to prove intentional interference with property rights—is erroneous. Without a finding of liability, Mann may not recover money damages. Thus, the trial court's award of no damages is not so contrary to the great weight and preponderance of the evidence such that it is manifestly unjust. *See Croucher,* 660 S.W.2d at 58.

## B. Attorney's Fees

By his second cross-appeal issue, Mann asserts the trial court's award of $4,069.98 is against the great weight and preponderance of the evidence.[5] While Mann's argument generally addresses the reasonableness and necessity of attorney's

---

[5] This award was for the work of Mann's first attorney, who provided billing records for a portion of her attorney's fees. The trial court did not award any attorney's fees for the work of Mann's second attorney.

fees, he also attempts to justify his failure to segregate fees. Mann claims that his causes of action are so interrelated that there is no need for segregation.

### 1. Applicable Law

In *Tony Gullo Motors I, L.P. v. Chapa*, the Texas Supreme Court held that parties claiming attorney's fees must "segregate fees between claims for which they are recoverable and claims for which they are not" and are "required to show that attorney's fees were incurred while suing the defendant sought to be charged with the fees on a claim which allows recovery of such fees." 212 S.W.3d 299, 311 (Tex. 2006) (quoting *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991)). "Intertwined facts" do not make fees for unrecoverable claims recoverable. *Id.* at 313–14. "[I]t is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* Thus, "[i]f any attorney's fees relate solely to a claim for which such fees are unrecoverable, the claimant must segregate recoverable from unrecoverable fees." *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 506 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Chapa*, 212 S.W.3d at 313–14).

### 2. Analysis

Mann's attorney, Tom Shipp, presented the evidence regarding attorney's fees. Shipp testified about his qualifications, the reasonableness of his hourly rate, and the fee amounts. He also introduced billing invoices beginning with his involvement in the case. According to Shipp, he worked a total of 204.3 hours on the case while his legal assistant worked 52.3 hours. He further testified that a reasonable value for his attorney's fees,

costs, and expenses through trial was $90,433.92. Marcia Tillman, Mann's previous attorney, testified that her billing for April 2012 was $4,069.98, but did not provide billing for any other months of her representation. Robles objected to Mann's request for attorney's fees based on Mann's failure to segregate.

Shipp did not attempt to segregate the attorney's fees attributable to the unsuccessful tort claims from those fees attributable to the successful declaratory judgment claim. Shipp failed to show whether all or what portion of his attorney's fees were incurred for legal services involving the declaratory judgment action. A review of the invoices submitted into evidence clearly shows that some of Mann's attorney's fees related to his unrecoverable tort claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West, Westlaw through 2015 R.S.) ("[T]he court may award costs and reasonable and necessary attorney's fees as are equitable and just."); *Huddleston v. Pace*, 790 S.W.2d 47, 49 (Tex. App.—San Antonio 1990, writ denied) ("Generally, attorney's fees are not recoverable in an action for tort . . . unless provided by statute."). For example, the fees incurred in drafting the amended petition relating to the tort claims were not recoverable, while the portion of the fees relating to the declaratory judgment claim was recoverable. As a result, we conclude that Mann is required to segregate his fees. *See Chapa*, 212 S.W.3d at 313.

The remedy for unsegregated attorney's fees is a new trial on the issue, not rendition of a take-nothing judgment on the claim for attorney's fees. *See id.* at 314; *Stewart Title Guar. Co.,* 822 S.W.2d at 11. As the Texas Supreme Court stated in *Chapa,* "[u]nsegregated attorney's fees are some evidence of what the segregated

20

amount should be." *Chapa*, 212 S.W.3d at 314. Mann may recover attorney's fees for his declaratory judgment claim and the testimony from Shipp of the unsegregated amount constituted some evidence of his segregated attorney's fees. Therefore, we conclude the trial court's nominal award of $4,069.98 in attorney's fees is against the great weight and preponderance of the evidence. We sustain Mann's second issue.

#### IV. MANN'S MACHINE, INC.

The record contains no evidence that Mann's Machine, Inc. has any ownership interest in the dominant estate or any possessory interest in the easement. Rather, Mann has generally included Mann's Machine, Inc. in their damage claim premised on intentional interference with property.

Mann does not provide any argument or case authority to discuss the issue of whether a corporate entity without a property interest may recover on a cause of action for intentional interference with a private road access easement. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Inasmuch as Mann's Machine, Inc.'s relies on the same operative facts as Mann regarding this issue, it fails for the same evidentiary reason that Mann's damage claim issue failed. Consequently, we conclude that Machine, Inc. could not have prevailed on a cause of action for intentional interference with a private access easement under the facts of this case. *See Cleveland Reg. Med. Ctr., L.P.,* 323 S.W.3d at 349.

21

## V. CONCLUSION

We reverse the trial court's judgment regarding attorney's fees and remand for further proceedings consistent with this opinion. In all other respects, the trial court's judgment is affirmed.

GREGORY T. PERKES
Justice

Delivered and filed the
21st day of April, 2016.